BELT. RY. CO. OF CHICAGO v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. February 3, 1909. On Rehearing, March 18, 1909.)

No. 1,475.

RAILROADS (§ 229*)—INTERSTATE COMMERCE—SAFETY APPLIANCE ACTS.

Defendant owned a railroad located wholly in Cook County, Ill. Its road constituted a belt which intersected the trunk lines leading into Chicago, and forming, by means of Y's, direct physical connection with such trunk lines. Defendant's business consisted entirely of transporting cars between industries located along its line and trunk lines and between such trunk lines, for which it received an arbitrary charge per car, which was collected monthly from the railroad companies, defendant having no dealings with shippers. Defendant paid no attention to the class of traffic, but acted as an agent for the trunk lines in transferring cars. Defendant on the occasion in question moved a train of freight cars, containing one consigned from a point in Illinois and destined to Wisconsin, from the

tracks of the Chicago & Eastern Illinois Railroad to those of the Chicago & Northwestern Railroad. *Held,* that such transfer constituted in effect a continuous carriage over both such roads, so that defendant with respect thereto was engaged in interstate commerce, and was within the safety appliance acts in relation to power brakes. Act Cong. March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174); Act Cong. April 1, 1896, c. 87, 29 Stat. 85; Act Cong. March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 885).

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

Seaman, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

William J. Henley, for plaintiff in error.

James H. Wilkerson, Luther W. Walter, Philip J. Doherty, and Edwin W. Sims, U. S. Atty., for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge. The writ is addressed to a judgment assessing a penalty against plaintiff in error for an alleged violation of the provisions of the Safety Appliance acts in relation to power brakes. Act Cong. March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174); Act Cong. April 1, 1896, c. 87, 29 Stat. 85; Act Cong. March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 885). Certain questions relating to the purpose, scope, and validity of this legislation are considered in Wabash R. Co. v. U. S., and Elgin, etc., R. Co. v. U. S. (herewith decided), 168 Fed. 1.

The only assignments presented and discussed by plaintiff in error are that the court erred in refusing to direct a verdict of not guilty, and in giving the following instruction:

"The question therefore presents itself, and it is a legal question, was the Belt Company, at the time it moved this string of 42 freight cars, containing a car originating in Illinois and destined to Wisconsin, engaged in interstate commerce? I charge you that when a commodity originating at a point in one state and destined to a point in another state is put aboard a car, and that car begins to move, interstate commerce has begun, and that interstate commerce it continues to be until it reaches its destination. If, between the point of origin of this commodity and the point of destination of this commodity, the car in which it is being vehicled from origin to destination passes over a line of track wholly within a city, within a county, or within a state, the railway company operating that line of track while moving this commodity, so originating and destined from one point to another point, intrastate, is engaged in interstate commerce."

Was there sufficient evidence to warrant the jury in finding that in hauling the train in question plaintiff in error as a common carrier was "engaged in interstate commerce by railroad"?

The railroad tracks of plaintiff in error lie wholly within Cook county, Ill. There are 21 miles of main line and about 90 miles of switching and transfer tracks. The main line constitutes a belt that intersects the trunk lines leading into Chicago. By leads and Y's direct physical

connection with the trunk lines is maintained. Plaintiff in error's business consists in transporting cars between industries located along its line, between industries and trunk lines, and between trunk lines. The first two kinds need not be noticed, as the transportation here involved was between trunk lines. The train in question contained, among others, a car laden with lumber, and consigned from a point in Illinois on the Chicago & Eastern Illinois to a point in Wisconsin on the Chicago & Northwestern. This car was taken by plaintiff in error from the tracks of the Eastern Illinois over the Belt Line and put on the tracks of the Northwestern. For services of this kind plaintiff in error makes arbitrary charges of so much a car, which are collected monthly from the railroad companies for which the services are rendered. In such operations plaintiff in error has no dealings with the shippers, and pays no attention to the class of traffic. Its relation to the traffic was stated by the general superintendent, as follows:

"The Belt Company acts practically as an agent for the trunk lines in the handling of cars from one connection to another through its yards."

In United States v. Geddes, 131 Fed. 452, 65 C. C. A. 320, defendant as receiver was operating a narrow-gauge railroad that lay wholly in Ohio. "At Bellaire it connected with the Baltimore & Ohio Road, in the sense that it received from the Baltimore & Ohio freight from other states marked for points on its line, and delivered to the Baltimore & Ohio freight from points on its line marked for other states, in the following manner: There was no interchange or common use of cars, the gauges of the two roads being different. The cars of the defendant road were used only on its own line. But a transfer track ran from the main line of the Baltimore & Ohio to the terminal station of the defendant road, so that the freight cars of the two roads could be placed alongside adjoining platforms, and the transfer of freight made by the use of trucks handled by the Baltimore & Ohio men. No through bills of lading for such freight were issued by either road, no through rate was fixed by mutual arrangement, and no conventional division of a through freight charge was made." The Circuit Court of Appeals for the Sixth Circuit decided that the narrow-gauge cars in question were not subject to the safety appliance act, holding that a common carrier was not "engaged in interstate commerce by railroad" within the meaning of the safety appliance act unless, referring to the definition in the original interstate commerce act, it was "engaged in the transportation of passengers or property wholly by railroad or partly by railroad and partly by water when both are used, under a common control, management, or arrangement for a continuous carriage or shipment" from one state to another. The equipment of a narrow-gauge railroad which lay wholly in Colorado, and which was similarly endeavoring to conduct a separate and independent business, was held by the Circuit Court of Appeals for the Eighth Circuit to be within the safety appliance act. U. S. v. Colorado, etc., R. Co., 157 Fed. 321, 85 C. C. A. 27, 15 L. R. A. (N. S.) 167. Plaintiff in error argues the present case as if the judgment could not properly be affirmed without our adopting the decision in the Eighth Circuit as against that in the Sixth. In our judgment the question presented to

those courts is excluded from our consideration by certain distinguishing and controlling facts. The narrow-gauge track had no direct physical connection with the broad-gauge tracks of the interstate trunk lines, and so no cars from other states, laden with goods from other states, were hauled on the local highway. The Belt Line physically connected its track with those of the Eastern Illinois and of the Northwestern, so that a continuous highway across state lines was formed, on which interstate traffic, loaded on interstate cars, was moved from origin to destination without change of cars. The narrow-gauge road, by limiting its bills of lading to points on its own line, endeavored to escape being held a common carrier engaged in interstate transportation. The Belt Line, issuing no bills of lading because of having no dealings with the shipper or with any one on his behalf, performing its gateway service on account of and as agent of the trunk lines, made its track the track of its principals. Consequently the character of the transportation should be determined by considering the transportation as the act of such principals. Trunk-line yards are in some instances so related to each other that through cars can be transferred without the intervention of a go-between. We are of opinion that the transportation in question was the same in legal effect as if the Eastern Illinois by means of its own locomotive and track had put the through car on the Northwestern's track. In this view there was evidence from which the inference of fact might warrantably be drawn by the jury that there was a common arrangement for a continuous carriage over the Eastern Illinois and the Northwestern; and so, with respect to the movement in question, plaintiff in error was engaged in interstate transportation.

When the portion of the charge complained of is read in the light of the undisputed facts, we see no basis for saying that the substantial rights of plaintiff in error were injuriously affected.

The judgment is affirmed.

SEAMAN, Circuit Judge (dissenting). I cannot concur in the affirmance of this judgment, as I believe the operation of the Belt Company described in the record is not within the meaning of the safety appliance act. It clearly appears that this company was an independent railroad within the city, engaged only in transferring cars (loaded or unloaded) from the terminal of one trunk line in Chicago to that of another trunk line; that it had no part in the shipment of any commodities which were upon the cars, nor interest in shipping bills or rates charged, nor concern in their ultimate destination and delivery to consignee; that its only service involved herein was the transfer of cars over its own lines, from one terminal to the other in Chicago, when the cars were delivered to it by a trunk line to be so transferred, for which service the Belt Company was paid by the trunk line an arbitrary rate per car, on monthly collections. In such service the Belt Company is neither chargeable with notice whether the service of the trunk lines in respect of the cars is interstate commerce or otherwise, nor concerned in such inquiry, as I believe. It was not "engaged in interstate commerce," as defined in the interstate commerce act, and I

am of opinion that the two acts are in pari materia, so that the terms of the safety appliance act are inapplicable to the service thus performed by the Belt Company, and the judgment should be reversed.