ATCHISON, T. & S. F. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit.   April 23, 1912.)

No. 1,800.

1. **RAILROADS** (§ 254*)—**SAFETY APPLIANCE ACT**—**LOW DRAWBARS.**

Under Safety Appliance Act March 2, 1893, c. 196, § 5, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3175), providing that no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard provided for, it was no defense, to an action to enforce a penalty for the use of a car in interstate commerce with a drawbar less than the standard height above the rails, that the lowering of the bar was caused, not from any defect therein, or in its attachment to the frame of the car, but from the breaking of a king pin, whereby the frame to which the drawbar was secured was lowered.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 764–772; Dec. Dig. § 254.*]

2. **RAILROADS** (§ 229*)—**INTERSTATE COMMERCE**—**REGULATION**—**SAFETY APPLIANCE ACT**—"**TRAIN.**"

Safety Appliance Act March 2, 1893, c. 196, § 1, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), provides that, after January 1, 1898, it should be unlawful for any interstate carrier, by rail, to use any locomotive engine in moving interstate traffic not equipped with a power driving wheel brake and appliances for operating the train brake system, or to run any train in such traffic, after that date, that had not a sufficient number of cars in it so equipped with power or train brakes that the engineer of the locomotive drawing such train could control its speed without requiring the brakeman to use the common hand brake for that purpose; and Act March 2, 1903, c. 976, § 2, 32 Stat. 943 (U. S. Comp. St. Supp. 1909, p. 1315), required that 50 per cent. of the cars should be equipped with air brakes. *Held*, that such section was not limited to road trains, but applied to interstate trains, destined to a particular railroad yard, which, before reaching their destination, were operated by a switching crew.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*

For other definitions, see Words and Phrases, vol. 8, pp. 7056, 7057.

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the United States of America against the Atchison, Topeka & Santa Fé Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Robert Dunlap, Lee F. English, and James L. Coleman, for plaintiff in error.

James H. Wilkerson, U. S. Atty., Harry A. Parkin, Asst. U. S. Atty., and Philip J. Doherty, Sp. Asst. U. S. Atty.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge. Penalties were assessed against plaintiff in error for violations of the Safety Appliance Act. Points respecting constitutionality have been abandoned. Two matters concerning the application of the statute are pressed as grounds for reversal.

[1] In a train used in interstate traffic plaintiff in error had a car

whose drawbar was less than the standard height above the rails. This condition was observed by the government inspector 15 minutes before the train left the yard. Violation of the statute is questioned on the ground that the condition resulted, not from any defect in the drawbar itself, or in its attachment to the frame of the car, but from the breaking of a king pin, whereby the frame to which the drawbar remained securely attached was lowered. But the statute (section 5) provides that "no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard above provided for." So it is immaterial whether the lowering was caused by the sagging of the drawbar from the frame or the sagging of the entire frame; and the resulting condition of noncompliance with the standard height would be as observable in the one case as in the other.

[2] Less than the required number of cars in the train had air brakes under the control of the engineer. Corwith is an outer Chicago yard, where incoming trains used in interstate traffic are stopped and the cars are distributed upon various tracks. Cars that are destined to plaintiff in error's inner yard at Eighteenth street are assembled at Corwith into a train and moved about eight miles to Eighteenth street over switch tracks, leads, and main tracks of plaintiff in error, across a drawbridge and three railroads, at the rate of six to eight miles per hour. Beyond Corwith the trains are under the jurisdiction of the train dispatcher; between Corwith and the Eighteenth Street yard, of the yardmaster. At Corwith the regular "road" crews give up the trains, and from there to Eighteenth street trains are handled by "switching" crews. From Corwith to Eighteenth street the railroad is wholly within Cook county, Ill.

Section 1 of the act of March 2, 1893, provides:

"That from and after the first day of January, 1898, it shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving wheel brake and appliances for operating the train brake system or to run any train in such traffic after said date that has not a sufficient number of cars in it so equipped with power or train brakes, that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose."

Section 2 of the amendment of March 2, 1903, required that 50 per cent. of the cars should be equipped with air brakes and placed under the control of the engineer; and authorized the Interstate Commerce Commission by order to increase the percentage. On the occasion complained of the required percentage was 75.

From the use of the words "run," "speed," and "brakemen" in the original act plaintiff in error argues that this provision for the engineer's control of the train by means of air brakes applies only to "road" trains. But, in our opinion, Congress, in requiring a train to be "so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose," employed the word "brakemen" generically as including any and all

men, whether specifically known as "conductors" or "brakemen" or "yard foremen" or "switchmen," whose duties in connection with the train would oblige them to use the common hand brakes in the absence of air brakes, and intended that the engineer should be able to "control the speed" and bring quickly to a standstill a train moving slowly through a congested region of drawbridges and railroad crossings, as well as a train moving rapidly on a single clear track in the country. Interstate cars destined to Eighteenth street did not complete their interstate journey until they reached that point; and the dangers to the men engaged in moving those cars and to the interstate traffic itself were at least as imminent as the dangers on the "road."

These considerations, expressed more at large in Belt Ry. Co. v. United States, 168 Fed. 542, 93 C. C. A. 666, 22 L. R. A. (N. S.) 582, and Wabash Ry. Co. v. United States, 168 Fed. 1, 93 C. C. A. 393, require that the judgment be affirmed.