## UNITED STATES v. GRAND TRUNK RY. CO. of CANADA.

(District Court, W. D. New York. March 8, 1913.)

RAILROADS (§ 229*)—REGULATION—SAFETY APPLIANCE ACT—"TRAIN."

Where defendant railroad company hauled certain cars from Buffalo to Bridgeburg, in Canada, a distance of about two miles over a drawbridge crossing a Barge Canal and the International Bridge across Niagara river, not in pursuance of switching operations nor in defendant's yards, but that they might be delivered to another crew at Bridgeburg and continued on their journey to destination, such cars and locomotives, though without a caboose, constituted a "train," within Safety Appliance Act of March 2, 1893, c. 196, § 2, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), requiring all cars to be equipped with power brakes, to be operated by the engineer, the word "train" being used in its ordinary sense as a connected line of cars or carriages on a railroad; and hence a failure to have the air brakes connected so that they could be operated from the engine constituted a violation of the act.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*

For other definitions, see Words and Phrases, vol. 8, pp. 7056, 7057.]

Action by the United States against the Grand Trunk Railway Company of Canada. Judgment for the United States.

John Lord O'Brian, U. S. Atty., of Buffalo, N. Y.

Moot, Sprague, Brownell & Marcy, of Buffalo, N. Y. (John W. Ryan, of Buffalo, N. Y., of counsel), for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HAZEL, District Judge. Action to recover penalty for violation of section 2 of the Safety Appliance Act, passed March 2, 1893 (27 Stat. 531, c. 196 [U. S. Comp. St. 1901, p. 3174]), as amended. It is substantially provided by the said act that trains shall have their brakes. including the brakes of all power-braked cars in such train, used and operated by the engineer of the locomotive drawing the train. The statute, which is broadly phrased, does not contain any exceptions, or specifically refer to yard movements or switching movements, or to any conditions under which such power brakes are not required to be controlled by the engineer, and it is therefore important to determine whether the cars in this case come within the provisions of the act.

. 'The undisputed facts show that the cars constituting the train were hauled from Black Rock, in Buffalo, to Bridgeburg, in Canada, a distance of approximately two miles, over a drawbridge crossing the Barge Canal and over the International Bridge across Niagara river. The cars were not engaged in the performance of a switching operation, nor were they moving in the yard of the defendant company; but the evidence as to one cause of action set forth in the complaint shows that 9 cars were coupled and loaded, and hauled by a locomotive, and, as to the other cause of action, that there were 25 coupled, loaded cars similarly hauled on the main track to Bridgeburg, from whence they were destined to other points. I think the journey was fairly initiated at Buffalo, and that the cars coupled to the locomotive constituted a train, and that the operators of the train constituted a train crew, even though orders from the train dispatcher of the defendant were not given to them at Buffalo, but were given to another crew relieving them at Bridgeburg.

In Webster's Dictionary the word "train" is defined as a "connected line of cars or carriages on a railroad." In Detroit Street Railway v. Mills, 85 Mich. 634, 48 N. W. 1007, it is stated that "a train is a continuous or connected line of cars or carriages on a railroad." In Dacey v. Old Colony R. R. Co., 153 Mass. 112, 26 N. E. 437, and in Carson v. B. & A. R. R. Co., 164 Mass. 523, 42 N. E. 112, a train is defined to be "a locomotive and one or more cars coupled together and run upon a railroad." These definitions induce the belief that Congress, in enacting the Safety Appliance Act, used the word "train" in the ordinary and not the technical sense, regardless of the varying rules and practices of carriers.

The Supreme Court of the United States in Johnson v. Southern Pac. Ry. Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363, supports the view that, even though the statute was in derogation of the common law, it should not be so strictly construed as to defeat the purpose of Congress, and it was there held that locomotive engines are included in the act under the words "any car." By a parity of reasoning the words "any train" are believed to clearly include all trains having cars coupled together and locomotives drawing them, irrespective of whether a caboose is attached or markers displayed.

Upon the question of whether those in charge of the train between Buffalo, and Bridgeburg constituted a regular train crew, the decision of the Circuit Court of Appeals for the Seventh Circuit in Atchison, Topeka & Santa Fé Ry. Co. v. U. S., 198 Fed. 637, may profitably be

considered. There the train, carrying cars, caboose, and markers, was coupled together by switching crews from localities on the outskirts of Chicago, and hauled from different side tracks onto the main tracks across a drawbridge at a rate of from six to eight miles an hour and proceeded a distance of six miles; the crews at the time being under the supervision of the yardmaster and not of the train dispatcher. The only material difference between that case and the one at bar is as to the distances covered by the trains. While it is true that the trains in the latter case traveled a distance of only about two miles over the land and water, there seems to be no good reason why the air hose should not have been coupled up directly after the switching operation was completed, and the cars coupled and moved.

There is no appreciable hardship to the defendant in requiring compliance with the provisions of the act, which obviously was passed to minimize dangers and risks to which brakemen and switchmen are subjected. It would probably be more convenient for the defendant to couple and uncouple the air hose at Bridgeburg, across the river, where its train dispatcher is located, and where another crew assume control of the train; but the train crew—for such I think they were— accompanying the train to Bridgeburg were entitled to the protection which the statute obviously designed they should receive as soon as the locomotive and cars, engaged in interstate commerce, were coupled together and started on the main track towards their destination.

A decree may be entered in both causes of action against the defendant for the penalty provided by the statute.