UNITED STATES v. NEW YORK CENT. & H. R. R. CO.

(District Court, W. D. New York. May 26, 1913.)

COMMERCE (§ 27*)—SAFETY APPLIANCE ACT—EQUIPMENT OF CARS.

Defendant railroad company used different yards at R., extending over six miles, all of which were under the control of a general yardmaster. It was necessary, in operating cars in the yard limits and in moving them, from one yard to another, to switch onto branch tracks running into industrial yards adjacent to the switch tracks, where such cars were loaded or unloaded, and then hauled away and assembled preparatory to proceeding. A train of 39 empty freight cars, only 25 of which were equipped with air brakes, was transferred from one part of the yard to another, a distance of four miles, where the cars were classified and inspected. The transfer was made by a switch engine, and the cars were moved for about two miles from the starting point over switch tracks, and from that point for the remaining two miles over a through freight track, which was also used in moving cars in the yards. *Held* insufficient to show that the train was engaged in interstate commerce, and the railroad was therefore not liable for violating the Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) for failure to have the air brakes connected.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

Action to recover penalties by the United States of America against the New York Central & Hudson River Railroad Company. Judgment for the government on three causes of action, and verdict directed for defendant on the fourth.

John Lord O'Brian, U. S. Atty., of Buffalo, N. Y.
Hoyt & Spratt, of Buffalo, N. Y., for defendant.

HAZEL, District Judge. The complaint alleges four causes of action to recover penalties for violation of sections 2 and 4, as amended, of the Safety Appliance Act, passed March 2, 1893 (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]). The answer of the defendant as to three of the causes of action was withdrawn at the trial, and the government may therefore enter a decree for the penalties arising from such admitted violations. The other cause of action, the second, in relation to which testimony was taken and the motions for direction of verdict held for consideration, is dismissed, and a verdict rendered for the defendant, on the ground that the government has not proven that the train or cars in question were engaged in interstate traffic at the time the air hose was left uncoupled.

The undisputed facts show that the train, consisting of 39 empty freight cars, only 25 of which were equipped with air brakes, was transferred from the yard of the defendant at Charlotte Junction, N. Y., to its Rochester yard terminal, a distance of four miles, where the cars were customarily classified and inspected. The locomotive used to make the transfer was a yard locomotive, and the train or cars were moved for about two miles from the starting point over switching tracks to Kent street in the city of Rochester, and from that point for the remaining two miles over track No. 4, which, although a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

through freight track, was also used for moving cars from the yards at Charlotte to the main yards at Rochester.

The evidence shows that the defendant uses different yards at Rochester, extending over a territorial distance of about six miles, all of which are under the control of a general yardmaster, and that it is necessary, in operating cars in the yard limits and in moving them from one yard to another, to switch onto branch tracks running into industrial yards adjacent to the switching tracks, where such cars are loaded or unloaded, and then hauled away and assembled preparatory to proceeding on their journeys. Assuming that the locomotive and cars in question constituted a train, as that term is defined in Webster's Dictionary and in various adjudications cited in United States v. Grand Trunk Ry. Co. (D. C.) 203 Fed. 775, recently decided by this court, and assuming that in order to reach the main yards it was necessary for such train to go over part of the through highway over which interstate traffic was customarily transported, it must nevertheless, I think, be conceded by the government that the Safety Appliance Acts were never intended to apply to switching operations. Erie R. Co. v. United States, 197 Fed. 287, 116 C. C. A. 649. The primary object of the statute was to require railroads to equip trains engaged in interstate traffic with air brake appliances, so as to minimize the dangers to the passengers and crews; but obviously it was never intended to require such appliances to be coupled up or connected while cars are being hauled by a switching engine from one yard to another, or shunted out at different points, and are not actually engaged in interstate traffic.

It is clearly shown in this case that the cars were assembled for transfer to the main yard, where they were to be classified and inspected. The yard crew operated the train, the cars were empty, and one, being found crippled, was released and shunted onto a branch track, even before the train reached the main or through track No. 4. For the government to prove that the connected cars, constituting a train, were taken over a part of the main line over which interstate traffic was customarily moved, and then to claim that the transportation assumed an interstate character and automatically became subject to the provisions of the acts, is not sufficient.

This is not a case like Southern Pacific Ry. Co. v. United States, 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72, where some of the cars were loaded and on their way to another state, and others unloaded, or where a commingling of interstate and intrastate traffic was being hauled over the main track used for interstate transportation. Nor, indeed, are the facts within the principles of Belt Ry. Co. of Chicago v. United States, 168 Fed. 542, 93 C. C. A. 666, 22 L. R. A. (N. S.) 582, or of A., T. & S. F. Ry. Co. v. United States, 198 Fed. 637, 117 C. C. A. 341. In the case of Belt Ry. Co. of Chicago v. United States the train of freight cars was loaded and contained a car originating at a point in Illinois and destined to Wisconsin, which was taken from the tracks of one railroad to the tracks of another. The Circuit Court of Appeals for the Seventh Circuit held that such transfer constituted a continuous carriage over both railroads, and that the

commodity was transported in interstate commerce. In A., T. & S. F. Ry. Co. v. United States the regular crew surrendered the train to the switching crew at Corwith, from whence the train was taken to Eighteenth street, and as the train was in fact engaged in moving interstate traffic, and originally destined to Eighteenth street, the court held that the interstate journey was not completed until the destination was reached, and that it made no difference that the train was taken in charge by a switching crew.

The conclusions reached herein find support in Erie R. Co. v. United States, supra, a decision by the Circuit Court of Appeals for the Third Circuit.

The second cause of action is dismissed.