# JOSEPH LA MERE v. RAILWAY TRANSFER COMPANY OF THE CITY OF MINNEAPOLIS.[1]

March 13, 1914.

Nos. 18,440—(272).

**Federal Safety Appliance Act — Employer's Liability Act.**

In an action for personal injuries by a switchman against a railroad engaged in an interstate operation it is *held:*

(1) The evidence was sufficient to go to the jury on the question whether the engineer, a fellow servant, was negligent in making an emergency stop when there was no emergency; and that if he was negligent the defendant

---

[1] Reported in 145 N. W. 1068.

Note.—On the question of the duty and liability under Federal and state railway safety appliance acts, see notes in 20 L.R.A.(N.S.) 473 and 41 L.R.A. (N.S.) 49.

was chargeable with his negligence within the provisions of the Federal Employer's Liability Act of April 22, 1908, (35 St. 65.)

(2) The Federal Safety Appliance Act, as amended by the act of March 2, 1903, (32 St. 943) requiring air brakes in operation on all trains, applies to an engine and 15 cars loaded and switched in the yards of the defendant transfer railway company and placed upon a track set apart for the use of a particular road, and thereafter moved by the engine and crew some six or seven blocks, a distance of something like a half mile, across a number of switches, and across and along the two parallel main tracks of an independent railroad, and into the yards of the company to which the cars belonged.

(3) The failure of a railroad company to have the air brakes in operation in an interstate movement makes it liable to an employee proximately injured because of such failure regardless of its actual negligence.

(4) The evidence was sufficient to justify the finding of the jury that the failure to have the air brakes in operation was the proximate cause of the plaintiff's injury.

(5) Contributory negligence is not a defense to an action based upon the Federal Employer's Liability Act, or the Federal Safety Appliance Act, except as in the former case it may reduce damages; and the issue of contributory negligence having been fairly tried and submitted, and there being no claim of excessive damages, the question of contributory negligence is not of importance.

(6) The assumption of risks is not a defense when the action is based upon the Federal Safety Appliance Act, for section 8 of the act excludes it; and the Employer's Liability Act of April 22, 1908, apparently abrogates it. "It is not a defense to a negligent act of the engineer; but an employee assumes the risks necessarily attendant upon the proper operation of the train." In this case the question of the plaintiff's assumption of risks was for the jury.

Action in the district court for Hennepin county to recover $25,000 for personal injury received while in the employ of defendant. The answer alleged that, if plaintiff received any injury, it was caused solely by his failure to exercise ordinary care for his own protection, and that such omission was the proximate cause of any injury received. The case was tried before Booth, J., who denied defendant's motions for a directed verdict, and a jury which returned a verdict for $6,000 in favor of plaintiff. From an order

denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed.   Affirmed.

*W. H. Bremner* and *F. M. Miner,* for appellant.

*Samuel A. Anderson,* for respondent.

DIBELL, C.

Action for personal injuries.   Verdict for the plaintiff.   Defendant appeals from the order denying its alternative motion for judgment or for a new trial.

The plaintiff was a switchman.   The complaint alleges negligence in the engineer of the defendant in stopping the train, which the plaintiff was riding, so suddenly as to throw him from the ladder on the side of a car; and in not complying with the provisions of the Federal Safety Appliance. Act requiring it to have in operation air brakes.

The verdict was general.   If, therefore, either ground of negligence was improperly submitted, or the verdict on either not justified, there must be a new trial, as also there must be if the question of contributory negligence or of assumption of risks was erroneously submitted.   If the evidence shows no right of recovery there must be judgment notwithstanding the verdict.

1.  The first ground of negligence is that the engineer of the train on which the plaintiff was working, his fellow servant, negligently stopped the train with a jerk, throwing him from the side of the car down which he was climbing.   This ground of liability is based upon the Federal Employer's Liability Act of April 22, 1908 (35 St. 65.)

The specific claim of negligence is that an emergency stop was made when there was no emergency.   The evidence is very much in dispute.   The plaintiff's claim has support.   There was testimony in contradiction of it and testimony impeaching it.   The case was fairly submitted to the jury.   The trial court approved the verdict. The sufficiency of the evidence to sustain it is earnestly challenged. All of it has had our attentive consideration.   The defendant relies upon Beaton v. Great Northern Ry. Co. 123 Minn. 178, 143 N. W. 324.   This case is proper for consideration in this connection but it is not necessarily controlling.   We are unable to say that the jury

125 M.—11.

could not find as it did, and the question of the defendant's negligence is not for us as one of law.

2. The second ground of negligence is the failure to have in operation air-brakes.

The original Safety Appliance Act of March 2, 1893 (27 St. 531), was amended April 1, 1896 (29 St. 85) and was again amended March 2, 1903 (32 St. 943). Section 1 of the last amendment provides that the requirements as to train-brakes, automatic couplers, etc., shall apply to "all trains, locomotives, tenders, cars, * * · * used on any railroad engaged in interstate commerce, * * * and to all other locomotives, tenders, cars * * * used in connection therewith, excepting those trains, cars and locomotives exempted by the provisions of section six of said act of March second, eighteen hundred and ninety-three, as amended by the act of April first, eighteen hundred and ninety-six * * *." The exemption was of trains composed of four-wheeled cars, or trains of eight-wheeled standard logging cars, or to locomotives used in hauling such trains when such cars or locomotives were used exclusively for the transportation of logs. There was no other exemption. Congress could easily have made one. Such an exemption is made in the Safety Appliance Act of Minnesota, Laws 1909, p. 609, c. 488. The courts should make one by construction hesitatingly. The requirements as to automatic couplers and air-brakes are in the statute in immediate connection.

At the time of the passage of these Acts the terminal and belt-line and transfer companies and the method and extent of their operations were well understood. In the industrial centers the transfer business was largely conducted by them. They switched the cars, made them up into trains, varying in length, and hauled them varying distances as local conditions required.

The defendant is a transfer company. It is conceded that the operation in which it and the plaintiff were engaged at the time of his injury was an interstate operation. It was taking some 15 cars, all or all except one loaded, sometimes called a "drag," from its yards to the Chicago, Milwaukee & St. Paul yards, referred to sometimes as the Milwaukee Transfer. An important question is

whether these cars with the locomotive hauling them constituted a train within the meaning of the Safety Appliance Act. The cars had been loaded at the mills and switched on to track numbered 7 which was set apart for the use of the Milwaukee road. They were equipped with air-brakes, and the air-hose connections were coupled while they stood on track 7. There was no air in the air-line, that is, there was no connection with the engine. The cars were in use in interstate commerce. They were about to start on an interstate journey and their first movement was to the Milwaukee yards. In making this movement the train went on an up-grade onto the north bound main line of the Minneapolis & St. Louis Railroad Co., passed by a cross-over to the south-bound main line, followed it a short distance, crossed in its course a number of switches, and passed onto the Milwaukee Transfer. The main lines of the Minneapolis & St. Louis were traversed for something like four blocks. The length of this particular movement was some six or seven blocks, something like a half-mile. The danger was less than if the haul had been longer, just as the danger of one haul was less than of several. There was more danger because of traversing and crossing the two main lines of the Minneapolis & St. Louis. There was less danger than if there had been a number of main lines to cross and less danger than if a main line had been traversed a greater distance. The defendant hauled the transfers for four roads. It connected the air on all trains except those of the Milwaukee. The Milwaukee was the shorter haul. The danger from not using air in the Milwaukee haul may have been different in degree from the danger in other hauls, and sometimes it may have been different in kind, and it may have differed at times in degree and in kind from a main-line haul, at times being greater and at times less. In general the dangers were similar. They came from the fact that the engineer, without the air connected, was not in control of his train, and what the particular result might be on a long haul or a short haul, or on a main-track line, or on a haul through the transfer-yards, either to the trainmen or to the public, no one could foretell.

We are of the opinion that it should be held that the so-called "drag" was a train within the meaning of the Safety Appliance

Act. The switching had been finished when the cars were on track 7 and coupled. They were then starting on their way. It was not in a proper sense a switching operation at all. It is not important that no caboose was attached. It is not important that when the train got to the Milwaukee yards the cars might be re-arranged and go to different destinations as parts of different trains. It is not important that the engine was in a backward instead of a forward movement. The cars were on an interstate journey when they left track 7 and they made up a train. The trainmen were subject to the dangers against which the Safety Appliance Act sought to guard them by requiring the air to be connected. The cars and engine come within the ordinary definition of a train. Dacey v. Old Colony R. Co. 153 Mass. 112, 26 N. E. 437. The cases upon the precise question whether they constitute a train within the meaning of the Safety Appliance Act do not agree. The following are in support of the proposition that they do. Atchison, T. & S. F. R. Co. v. U. S. 198 Fed. 637, 117 C. C. A. 341; Belt Ry. Co. of Chicago v. U. S. 168 Fed. 542, 93 C. C. A. 666, 22 L.R.A.(N.S.) 582; U. S. v. Grand Trunk Ry. Co. (D. C.) 203 Fed. 775; U. S. v. Pere Marquette R. Co. 211 Fed. 220. The following are opposed: Erie R. Co. v. U. S. 197 Fed. 287, 116 C. C. A. 649; U. S. v. New York Cent. & H. R. R. Co. (D. C.) 205 Fed. 428; Chicago, Burlington & Q. R. Co. v. U. S. 211 Fed. 12.

In the case last cited it is conceded that "the word 'train' of course covers any string of cars hauled by an engine." The difficulty felt was that so defined it would necessarily apply to switching operations. It does not appear to us that such result necessarily follows, or that its determination necessarily determines this case.

In U. S. v. Pere Marquette R. Co. supra, involving the movement of some 16 or 17 cars switched and formed into a train and pushed from one switching or freight yard to another, the court said:

"That the use of a car whose coupling apparatus is inoperative upon the tracks of a railroad company engaged in interstate commerce and in connection with such commerce, either in a switch yard

or in actual road service upon the main line, is a violation of the Safety Appliance Acts is no longer an open question.   *   *   *

Should the statutory requirement concerning the use, connection and operation of train-brakes be given a different construction and interpretation from that which has been applied by the courts to the provisions relating to car-coupling apparatus? Clearly not. The two sections of the statute are identical in the form of language employed, in legislative intent, in remedial purpose, and in the mandatory obedience thereto which is required, the only difference being that in the one the unit is a train or a combination of cars, and in the other a single car. If section 1 of the original Safety Appliance Act stood alone there would be at least room for an argument that its provisions were intended by Congress to apply solely to trains made up for train service. But this section does not stand alone. It must be construed in connection with the other sections of the same statute and particularly in connection with and with reference to the modifying and explanatory act of March 3, 1903. In and by the latter Act, Congress has removed whatever doubt, uncertainty or ambiguity existed in the former one and has said plainly and unequivocally that the provisions and requirements of the earlier act 'shall be held to apply to *all* trains, locomotives, tenders, cars and similar vehicles used on any railroad engaged in interstate commerce.' The legislative intent so plainly expressed must be respected. The beneficial and remedial purposes of these statutes must not be defeated by strained construction and must not be made subordinate to either convenience or economy of railroad operation."

In Chicago, Burlington & Q. R. Co. v. U. S. supra, also involving the movement of transfer trains in the yards, Judge Hook, in his dissenting opinion, adopted somewhat like views. In the course of his opinion he used this language:

"The test of the application of the statute is in the essential nature of the conditions presented, not in the words by which they may be conveniently described. Otherwise the fate of the legislation would depend upon extraneous phraseology. It is noteworthy that the phrase 'switching operations' does not appear in the statute,

though that would have been the easy, obvious way had Congress broadly intended to exempt them. Here, that result is reached by construction. The last Act, 32 St. 943, declares that the provisions and requirements 'relating to train brakes  *  *  *  shall be held to apply to all trains  *  *  *  used on any railroad engaged in interstate commerce.' No broader declaration can be conceived. No exception like that urged upon us appears and a court should be most careful in inserting one by construction. If to observe the intent of an act of Congress 'any car' includes a locomotive engine (Johnson v. Southern Pacific, 196 U. S. 1), it would seem that the expression 'all trains used on any railroad engaged in interstate commerce' should be held to include the three trains of defendant. In view of the decisions of the courts, it is too late to say the three strings of cars with their engines were not 'trains' within the meaning of the law."

In Johnson v. Southern P. R. Co. 196 U. S. 1, 25 Sup. Ct. 158, 49 L. ed. 363, and in Southern R. Co. v. U. S. 222 U. S. 20, 32 Sup. Ct. 2, 56 L. ed. 72, as well as in other cases, the Federal Supreme Court clearly enough indicates that no narrow construction is to be given the Safety Appliance Act, but that it is to be construed so as effectively to protect life and limb of employees and the public.

Our opinion is that the trial court properly charged that the Safety Appliance Act applied to the operation involved. The question is an open Federal one and does not call for more detailed consideration by us.

3. If the Safety Appliance Act applied, and that depends upon whether the so-called "drag" was a train within its meaning, the operation of the train without air-brakes made the defendant liable for injuries proximately resulting to a trainman for whose protection the statute was enacted aside from all question of negligence. St. Louis, I. M. & S. Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. ed. 1061; Chicago, B. & Q. R. Co. v. U. S. 220 U. S. 559, 31 Sup. Ct. 612, 55 L. ed. 582. It is elementary that the violation of a statute enacted for the protection of a class is a delinquency which makes the violator liable to one of the class proxi-

mately injured through its violation.  1 Street, Found. Leg. Liab. 172.

4. The jury was justified in finding that the failure to have air brakes in operation, as required by the Safety Appliance Act, was the proximate cause of the injury to the plaintiff.  The evidence is that when the brakes. are set on the engine in an emergency a much harder shock or jerk is given than when the air brakes are in operation on the cars, and there is a recoil or rebound.  If there was an emergency stop, and the air was in operation, the train would have been under the engineer's direct control.

5. There is a claim of contributory negligence.

If the injury to the plaintiff resulted from the negligence of the engineer, a fellow servant, contributory negligence of the plaintiff, under the Federal Employer's Liability Act of April 22, 1908 (35 St. 65), was not a defense, and was important only as it might reduce damages upon the application of the doctrine of comparative negligence.  Since the issue of contributory negligence was properly tried and submitted, and since it is not claimed that the damages are excessive, the question of contributory negligence is not of consequence here.  If the injury resulted in an interstate operation from the violation of the Safety Appliance Act of March 2, 1903 (32 St. 943), contributory negligence was not a defense because of the provisions to that effect incorporated in the Employer's Liability Act of April 22, 1908 (35 St. 65.)   See Delk v. St. Louis & S. F. R. Co. 220 U. S. 580, 31 Sup. Ct. 617, 55 L. ed. 590; Schlemmer v. Buffalo, R. & P. Ry. Co. 220 U. S. 590, 31 Sup. Ct. 561, 55 L. ed. 596; Mondou v. New York, N. H. & H. R. Co. 223 U. S. 1, 32 Sup. Ct. 169, 56 L. ed. 327, 38 L.R.A.(N.S.) 44.

6. There is a claim of assumption of risks.

If the injury came from the violation of the Safety Appliance Act assumption of risks is not a defense, for it is excluded by section 8 of the Safety Appliance Act and is apparently abrogated by the provisions of the Employer's Liability Act of April 22, 1908.   See cases cited under paragraph 5.  The question of the assumption of risks is only important in connection with the charge of negligence in stopping the train suddenly and with a jerk, discussed in para-

graph 1. There was no assumption of risks as a matter of law. A brakeman on the train assumes the danger of the ordinary bumping of the cars attendant upon their usual and proper operation, or, putting it in another way, the railway company is not negligent in respect of the bumping incident upon the usual and proper operation of the train. The brakeman does not assume the jerking and bumping caused by the negligent operation of the train.

Order affirmed.


BROWN, C. J.

I concur in the opinion of the court in this case in all respects except the conclusion that the Federal Safety Appliance Act, in so far as it requires all railroad trains to be equipped and operated with air brakes, applies to the string of cars here in question, and from that conclusion I respectfully dissent. In my view of the question the Federal statute was intended to apply only to what is generally known and understood as a train of cars made up for movement on the road, and not to a string of cars being moved about the railroad yards in switching operations, as in the case at bar.