MAUDE CRECELIUS, Administratrix of Estate of WALTER CRECELIUS v. CHICAGO, MILWAU- KEE & ST. PAUL RAILWAY COMPANY, Appel- lant.

In Banc, July 12, 1920.

1. **DEPARTURE: Motion to Strike Out: Waiver.** A motion to strike out certain portions of the amended petition on the ground that they constitute a departure from the cause of action previously stated is waived by filing an answer and proceeding to trial after the motion is overruled; if defendant wishes to preserve the motion for review in the appellate court, he must stand upon it in the trial court.

2. **CONTRIBUTORY NEGLIGENCE: Demurrer to Evidence.** In ac- tions for damages for personal injuries brought under the Federal Employers' Liability Act, contributory negligence does not bar a recovery, and hence the court cannot take the case from the jury on the ground that the evidence conclusively shows that deceased was guilty of contributory negligence.

3. **INTERSTATE COMMERCE: Time-keeper: Killed in Act of Send- ing Telegraph Report.** The defendant railroad company was a com- mon carrier engaged in interstate commerce, and the evidence shows that deceased was the time-keeper for a group of workmen in defendant's employ; that he was employed by the month; that his duties required him to keep a record of the men employed, check them up at least twice a day, and make two daily reports to his superiors, one by telegraph and one by mail; that at the moment when he was struck by defendant's way-freight train he was on his way to the telegraph office to make his daily tele- graphic report; that during the day the men under his observation had been employed in part in constructing a temporary or pass- ing track and in part in work upon the main track, which was used in interstate commerce, and that the train which struck him, although moving on the passing track, was an interstate train. *Held*, that deceased was engaged in interstate commerce.

4. ———: ———: ———: **Humane Statute.** The Federal Employers' Liability Act is a humane statute, and should be liberally con- strued to promote its important purpose. The work of a time- keeper for a group of men employed in constructing or recon- structing an interstate railroad is an essential element thereof, and is a minor task which is essentially a part of a larger one.

Crecelius v. Milwaukee Ry. Co.

5. ———: **Stipulation: Waiver.** A stipulation, whether or not it amounted to an admission that deceased was not engaged in interstate commerce, was waived, if, though introduced in evidence, both sides ignored it, and both, without regard to it and without objection because of it, introduced evidence on the question whether deceased was so engaged.

6. **NEGLIGENCE: Instruction: Unfenced Track: No User by Public: Care.** Where one hundred men or more, employed by defendant in reconstructing its railroad tracks, were housed in bunk cars on the south side of the tracks; they were compelled to cross them to go to the stores, the post-office, the telegraph office, to the hydrant to obtain water, to the yard to obtain coal, and to the only toilet facilities provided for them; and defendant knew they were constantly crossing the tracks for those purposes, defendant was bound to use reasonable care and caution to avoid injuring them, and the fact that the general public did not traverse the tracks did not absolve defendant from the duty of using "reasonable care and caution for the personal safety of the occupants of said bunk cars while crossing the tracks;" and where such user is both pleaded and proven, and the evidence also tends to show that it was not usual for a work train to be upon the passing track at the time deceased, one of said occupants, was in the act of crossing the tracks, and that said train, which struck him, was running at a speed that was, under the circumstances, excessive and dangerous, it was not error to give such instruction.

7. ———: **Expert Testimony: Proper Method of Operating Train.** It is competent for witnesses who have had large experience in railroad work to testify whether it was reasonable and proper to have had some one stationed on the back end of a backing gondola train, and whether a reasonable and proper method of doing the work would have been to limit the speed to six or eight miles an hour, and whether a brakeman should have been stationed on the end of the gondola car if the work were to be done in a reasonably safe and proper manner.

8. ———: **Measure of Damages: Death of Husband and Father.** The instruction given in this case in which a wife, as administratrix, sues, under the Federal Employers' Liability Act, for the negligent killing of her husband, in which the jury are told to take into consideration his earning capacity and to reasonably compensate her for the loss of such pecuniary benefits as the evidence shows that she as the wife and her only child had reasonable expectation of receiving from him, is approved; and it is *held,* that the wife is entitled to recover reasonable compensation for the pecuniary loss sustained by herself and daughter as the result of the death of the husband and father.

9. ———: **Excessive Verdict: $25,000: Compensation: Death of Husband.** Deceased, thirty-four years of age, with a life-expectancy of thirty-two years, in sound health, industrious, of good habits, somewhat deaf, earning $52 per month, was negligently killed by a passing train, and no element of punitive damages or of an allowance for mental or physical suffering enters into the case. He left a widow and a small daughter, and the widow, as administratrix, sues under the Federal Employers' Liability Act, for the pecuniary loss to her and the child resulting from his death. He was guilty of contributory negligence, and under that act the compensation must be reduced in the proportion that his negligence was a factor in the total negligence which culminated in his death. Two juries have returned verdicts for $25,000. *Held*, that, taking into consideration the fact that deceased, were he now alive, would probably be earning much more than $52 per month, the verdict should be reduced to $15,000.

Appeal from Daviess Circuit Court.—*Hon. Arch B. Davis*, Judge.

AFFIRMED (*on condition*).

*Fred S. Hudson* for appellant.

(1) The court erred in refusing to strike out parts of plaintiff's second amended petition on account of same being a departure from the first petition. Scovill v. Glassner, 79 Mo. 449. (2) The court erred in not sustaining defendant's demurrer at the close of plaintiff's case and again at the close of the entire case. Illinois Central v. Behrins, 233 U. S. 473; Shanks v. Railway, 239 U. S. 556; D. L. & W. Ry. v. Yurkonis, 238 U. S. 439; C. B. & Q. v. Herrington, 241 U. S. 177; Matti v. Railway, 176 Pac. 154; St. L. I. M. & S. Ry. v. True, 176 Pac. 758; Odell v. Railway, 248 Fed. 343, 345; Erie Railroad v. Welsh, 242 U. S. 303; Jacoby v. Railroad, 161 N. W. 753. (3) Deceased was an employee, familiar with the yards and train movements, and defendant did not owe him the same duty that it would a passenger, trespasser or invitee. Cahill v. Railway, 205 Mo. 408; Degonia v. Railway, 224 Mo. 564;

Rashall v. Railway, 249 Mo. 519; Gabal v. Railway, 251 Mo. 270. (4) Deceased was guilty of contributory negligence as a matter of law. Crecelius v. Railway, 274 Mo. 684. (5) The crew of which Crecelius was time-keeper was constructing a new, temporary track, and as to this work, neither plaintiff nor defendant was engaged in any kind of commerce, the work being purely new construction work. Raymond v. Railway, 243 U. S. 43; New York Central v. White, 243 U. S. 188; Peterson v. Railway, 229 U. S. 146; Bravis v. Railway, 217 Fed. 234; C. & E. Railway v. Steel, 108 N. E. 4; McKee v. Railway, 88 S. E. 616; So. Pac. Ry. v. Indust. Acct. Co., 40 Sup. Ct. Rep. 130. (6) The stipulation states what the company and the deceased were doing on the day that Crecelius was killed, and clearly shows the work was new construction, and that neither party was engaged in interstate commerce, and that the accident occurred after the day's work was over. Authorities under Point 5. (7) The stipulation is binding on plaintiff. Carroll v. Raul, 19 Mo. 103; Pratt v. Conway, 148 Mo. 299; Oskangan v. Arms Co., 103 U. S. 261; Butler v. National Home, 144 U. S. 65; Steamship Co. v. Emigration Commrs., 113 U. S. 37; Tootle v. Buckingham, 190 Mo. 195; St. Louis v. Babcock, 156 Mo. 154; State ex rel. v. Merriam, 159 Mo. 655; Walsh v. Railway, 102 Mo. 582; St. Charles v. Hackman, 133 Mo. 634; Ribard v. Railway, 257 Mo. 155; Steel v. Railway, 265 Mo. 116; Munford v. Wilson, 15 Mo. 540; Scaife v. Western Co., 90 Fed. 238; Gen. Elec. Co. v. Wagner, 130 Fed. 772; Prestwood v. Watson, 111 Ala. 607; Bingham v. Supervisors Winona County, 6 Minn. 88; Abbott's Trial Briefs, (Civil) 240; Rice on Evidence, 128; 1 Jones on Evidence, sec. 258; Greenleaf on Evidence, sec. 206. (8) The court erred in permitting expert testimony as to what was the negligent running of engines in the Morley yards. Hamilton v. Coal Co., 108 Mo. 370; Koons v. Railway, 65 Mo. 597; L. E. & St. L. Ry. v. Berry, 35 N. E. 566; Lawson on Expert and Opinion Evidence, 584; 8 Ency. Evidence, 954. (9) The ver-

dict under the testimony was excessive, and was the result of prejudice and passion and not that of deliveration. Ry. Co. v. Kelly, 241 U. S. 485; Ry. v. Gainey, 241 U. S. 494; Chafin v. Railway, 93 S. E. 882. (10) To show user it must be shown that the public as well as the employees used the track at the point of accident. Plaintiff's Instruction 2 was therefore erroneous. Degonia v. Railway, 224 Mo. 590. (11) The verdict is excessive in that the jury did not diminish the damages as required by the Employers' Liability Act and by Instruction 5. Railway v. Earnest, 229 U. S. 122; Railway v. Sheeley, 221 Fed. 906.

*Platt Hubbell* and *Geo. H. Hubbell* for respondent.

(1) The amendment in plaintiff's second amended petition is not a departure; and any claim of departure was waived by the appellant in answering to the merits and going to trial. Schroeder v. Edwards, 267 Mo. 482; Sperry v. Hurd, 267 Mo. 639; Smith v. Mo. Pac. Ry., 56 Fed. 458. (2) The appellant was negligent; and the cause was properly submitted to the jury. Ry. Co. v. Glinn, 219 Fed. 148; Crecelius v. Mil. Ry. Co., 274 Mo. 671; Kippenbrock v. Railroad Co., 270 Mo. 479; Hubbard v. Wab. Railroad Co., 193 S. W. 579; Erie Railroad Co. v. Downs, 250 Fed. 419, 38 Sup. Ct. Rep. 583; Haven v. Ry. Co., 175 N. W. 587; Brossard v. Ry. Co., 149 N. W. 915. (3) Plaintiff's instruction numbered 2 properly declares the law under the facts of this case. Crecelius v. Mil. Ry. Co., 274 Mo. 671; Kippenbrock v. Railroad, 270 Mo. 483; Hubbard v. Wabash, 193 S. W. 579. (4) Deceased was not guilty of contributory negligence. Haven v. Ry. Co., 175 N. W. 587; Erie Railroad Co. v. Downs, 250 Fed. 415, 38 Sup. Ct. Rep. 583; Choctaw Railroad v. Baskins, 93 S. W. 758; St. Louis, I. M. & S. Ry. Co. v. Dillard, 94 S. W. 617; Jennings v. Ry. Co., 112 Mo. 268; Wensel v. Ry. Co., 170 N. W. 409; Torrance v. Pryor, 210 S. W. 433; City of Louisville v. Vaughn, 206 S. W. 547;

City of Ashland v. Boggs, 171 S. W. 463, 161 Ky. 728, Ann. Cases, 1916B, 1005, 37 Sup. Ct. Rep. 652, 244 U. S. 654, 61 L. Ed. 1373. (5) On the day Crecelius was killed, part of the crew of which he was time-keeper were physically engaged in working on, and in the repair of the old main line track. The construction of the temporary track was also a part of the work of repairing the old main line track—and part of the work in raising and lowering the grade and making the fills and cuts in the roadbed of the old main line track—the construction of the temporary track was therefore not the construction of a new instrumentality of interstate commerce to be used permanently in the future, independently of the aforesaid repairs of the old main line track and roadbed; the temporary track was thereafter wholly abandoned and destroyed. The primary purpose of the temporary track was the repair of the old main line track and road-bed as aforesaid under the conceded facts of this record; and, all the work done by all the crew of which Crecelius was time-keeper, was work done in the repair of the old main line track and roadbed and was work in interstate commerce under the Federal Employers Liability Act. The cases cited by appellant are cases where the track or instrumentality was purely new construction work where the instrumentality was to be used permanently as an instrumentality of interstate commerce after completion, and was not incident to or a part of the work of repairing an old instrumentality then in use in interstate commerce as in the case at bar. Pederson v. Del., Lack. & West. R. R., 229 U. S. 146, 33 Sup. Ct. Rep. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; So. Ry. Co. v. McGuin, 240 Fed. 649; K. C. So. Ry. Co. v. Martin, 262 Fed. 241; Phil. B. & W. R. Co. v. Smith, 250 U. S. 101, 39 Sup. Ct. Rep. 396; Coons v. Louisville & N. Railroad Co., 215 S. W. 946; N. Y. Cent. Ry. Co. v. Porter, 249 U. S. 168, 39 Sup. Ct. Rep. 188; Kinzell v. Ry. Co., 250 U. S. 130, 39 Sup. Ct. Rep. 412; So. Pac. Co. v. Indust. Acc. Com., 40 Sup. Ct. Rep. 130; Ohio Valley Elec. Ry. Co. v. Brumfield's Admr., 203 S. W.

541; Eley v. Railroad Co., 166 N. W. 739; Cincinnati Ry. Co. v. Hall, 243 Fed. 80; Columbia & P. S. R. Co. v. Sauter, 223 Fed. 604; Erie Railroad Co. v. Winfield, 244 U. S. 170, 37 Sup. Ct. Rep. 557; Grand Trunk Ry. Co. v. Knapp, 233 Fed. 950; Coal & Coke Ry. Co. v. Deal, 231 Fed. 608; Brier v. Ry. Co., 168 N. W. 341, 183 Iowa, 212; Denver Railroad Co. v. Wilson, 163 Pac. 857; Richey on Fed. Em. L. & Saf. App. Act. (2 Ed.), sec. 36; 1 Roberts, Fed. Lia. of Carr., secs. 467, 468, 694; Louisville Railroad Co. v. Walker's Admr., 172 S. W. 519, 162 Ky. 209; Stool v. So. Pac. Co., 172 Pac. 101; Knowles v. Railroad Co., 223 N. Y. 513. Graber v. Duluth Railroad Co., 150 N W. 491; Crecelius v. Mil. Ry. Co., 274 Mo. 671. (6) The stipulation was properly set aside by the trial court on motion of the plaintiff. White v. Herminghausen, 275 Mo. 694; White v. Kincade, 95 Kan. 466, 148 Pac. 608, Ann. Cas. 1916B, 667. (7) The expert testimony was competent. Reifsnyder v. Ry. Co., 57 N. W. 693, 90 Iowa, 76; Quinlan v. Ry. Co., 84 N. W. 961, 113 Iowa, 89; Czezewzka v. Ry. Co., 121 Mo. 212; Schlereth v. Mo. Pac. Ry., 115 Mo. 107; Buckman v. Ry. Co., 100 Mo. 35; Abbott's Proof of Facts (3 Ed.), p. 830; 5 Encyc. Ev., pp. 600, 488, 692, 626; Goins v. Ry. Co., 47 Mo. App. 181; Spencer v. Bruner, 126 Mo. App. 102; Obermeyer v. Chair Mfg. Co., 120 Mo. App. 77; Seligman v. Rogers, 113 Mo. 654; Abbott's Trial Brief (2 Ed.), pp. 564, 28; Snyder v. Witner, 82 Iowa, 652; Holton v. Cochran, 208 Mo. 424; Jones on Ev. (2 Ed.) sec. 371, p. 464; Meily v. Ry. Co., 215 Mo. 590; Wilder v. Co., 134 Iowa, 451; Combs v. Const. Co., 205 Mo. 391; Fogus v. Ry. Co., 50 Mo. App. 265; Helfenstein v. Medart, 136 Mo. 615; 12 Am. & Eng. Ency. Law, 424, 425; Bradford v. Ry Co., 64 Mo. App. 483; Kreigh v. Westinghouse Co., 53 L. Ed. 984, 214 U. S. 249; Holmes v. Goldsmith Co., 37 L. Ed. 123, 147 U. S. 150; Gessley v. Ry. Co., 32 Mo. App. 418; Gordon v. Railroad, 222 Mo. 530; 3 Ency. Ev. 849, 855; Hamilton v. Mining Co., 108 Mo. 372; Moore v. Railroad, 268 Mo. 35; Mutual

Life Ins. Co., v. Hillmon, 36 L. Ed. 711, 145 U. S. 285; Denver Railroad Co. v. Spencer, 61 Pac. 606, 27 Colo. 313, 51 L. R. A. 121; Haines Admx. v. Ry. Co., 193 Mo. App. 464. (8) The verdict is not excessive in view of the present purchasing power of money. Louisville & N. Ry. Co. v. Holloway's Admr; 168 Ky. 262, 181 S. W. 1126, 246 U. S. 525, 38 Sup. Ct. Rep. 379; Gulf Ry. Co. v. Carpenter, 201 S. W. 270, 39 Sup. Ct. Rep 492; So. Ry. Co. v. Bennett, 233 U. S. 80, 34 Sup. Ct. Rep. 566, 58 L. Ed. 860, 98 S. C. 42; Meng v. Sav. Bank, 154 N. Y. Supp. 509, 169 App. Div. 27; 17 C. J. 1090, 1334; Neary v. Ry. Co., 110 Pac. 226.

WILLIAMSON, J.—This is a suit in damages under the Federal Employers' Liability Act, brought by ,Maude Crecelius as administratrix of the estate of Walter Crecelius, deceased, against the defendant, for the alleged negligent killing of the decedent, who was the husband of the plaintiff. She obtained a judgment in the sum of $25,000. From this judgment the defendant has duly appealed. This is the second appeal in this case. After a reversal in this court, Crecelius v. Ry. Co., 274 Mo. 671, the case was taken on change of venue to Daviess County, and plaintiff filed an amended petition. No questions are made as to the pleadings, except as hereinafter noted, and their contents need not be stated in detail.

The. evidence in behalf of the plaintiff tended to show that the decedent was about thirty-five years of age, in good health, was employed by the month at a salary of about fifty dollars per month; that the plaintiff was his wife; that he left one child surviving him; that at the time of his death he was quite hard of hearing; that the defendant company was engaged in interstate commerce, and the deceased was and for some time had been in its employ as a time-keeper at Morley, Iowa. He was attached to a group of workmen which on the day of his death had been engaged in building a passing track (which was intended for temporary use only), in the

284 Mo.—3

vicinity of Morley, Iowa, but it appears that the embankment upon which the passing track was built was, to some extent at least, intended to be used and was thereafter used for permanent purposes; that is to say, the scheme of improvement then being executed by the defendant contemplated a correction of the grade of the main track and the laying down of an additional track at the point, thus making a double track for permanent use. In so doing, the embankment necessary in laying down the temporary track was apparently consolidated with the main track, and was left in that condition when the second line of the main track was laid down. It was the duty of deceased to attend the working force so engaged, and to check up the men at work at least twice a day. On the day that the decedent met his death, some of these workmen had been engaged in working on the temporary track, and some of them had been working on the main line, removing and replacing ties and rails. The men returned from work, as a rule, on a train provided for that purpose, at about six o'clock p. m. of each day. After their return to Morley, they occupied the bunk cars which were located on the south side of the double track at Morley. It then became the duty of the decedent to make out his daily reports. There were two of these reports; one, in a much condensed form, was sent by telegraph, and the other, in the form of a letter, was mailed on a train which usually left Morley at about 8:30 p. m. The decedent occupied one of the bunk cars, in conjunction with a number of other men. On the evening of his death, he had made out his telegraphic report and stopped with it at a car occupied by a witness named Kroumian, an Armenian who served in the double capacity of interpreter and a sort of assistant time-keeper. Decedent told Kroumian that all of the men had been at work that day, and that he (decedent) was going to send his telegraphic report. A number of Armenians and other foreigners were employed in this work, and Kroumian's duty, in part, was to act as interpreter in transmitting orders from the foreman to the Armenians. The

evidence of the plaintiff tends to show that after the conversation with Kroumian above mentioned, the decedent left the bunk car in which the conversation occurred and went down to the south side of the passing track. He walked a short distance, some thirty or forty feet, west along the end of the ties on the south side of the passing track, until he reached the point at which he desired to cross the two tracks, which were apparently some nine or ten feet apart at that point. He then stepped in between the rails of the passing track, and looking to the east observed a way-freight train approaching from that direction. This train was so close to the decedent that he paused at that place to permit it to pass. As this train approached, the whistle was sounded, and when it had reached a point on the main track some eighteen or twenty feet from where the decedent was standing between the rails of the passing track, the decedent was struck by a gondola car which was being pushed by a work engine approaching him from the west. The freight train on the main track was still moving westward. Decedent was knocked down between the rails and his neck and back were broken. The body was found near or underneath the pilot of the engine.

The evidence in behalf of the plaintiff tended to show that the decedent had been standing between the rails with his face turned to the northeast, facing the train which was approaching from the east for about fifteen to twenty-five seconds, and that during that time the work engine pushing the gondola car approached from the west, with the result stated. Immediately before the decedent was struck and killed, some of the men who were in the bunk cars saw his danger and shouted a warning to the engineer upon the yard engine. This warning seems not to have been heard, or, if heard, was not heard in time. The engineer, however, discovered the decedent's perilous position before he was actually struck, and immediately endeavored to stop his engine and car. This attempt was made so forcibly and suddenly that

the car was partially derailed and ran for a short distance upon the ties and over the body of the decedent, but without coming in contact with it further than as above stated. There is evidence in behalf of the plaintiff tending to show that there was no brakeman upon the front end of the car which struck the decedent, as the rules required, nor was there any light displayed there, nor was the headlight lighted; that the engine and car in question were running at a speed of twelve to twenty miles per hour; that such a rate of speed, under the circumstances, was excessive and dangerous, and that decedent could have been seen by one riding upon the front end of the gondola car in time for the car to have been stopped without injuring him. It further appears, and seems to be admitted, that there were something more than one hundred men occupying the bunk cars on the south side of the tracks mentioned; that the town of Morley lay to the north of these two tracks; that it was necessary for the men occupying the bunk cars to cross the tracks in order to get to the depot, the telegraph office and the stores at which they traded in the town of Morley, and also in order to procure the water and coal which they used in the cars in which they lived. The custom of these men frequently to be upon and about these tracks, and to be crossing them for the purposes above mentioned and for other purposes, was well known to the defendant company. At the time the decedent was struck and killed, it was about dusk, and snow was beginning to fall. The evidence for the defendant directly contradicted that offered in behalf of the plaintiff in many material matters, but the verdict is conclusive upon us on those matters of fact, and hence no useful purpose would be served in pointing out the conflicts in detail.

Upon the conclusion of the evidence for the plaintiff, the defendant asked for a peremptory instruction, which was refused, and a like request made at the conclusion of all of the evidence met with a like fate. Exceptions were duly saved in both instances. At the re-

quest of the plaintiff the court gave to the jury fourteen instructions, and at the request of the defendant gave to the jury eight instructions. Defendant also requested instructions marked A to N, inclusive, which were refused. Exceptions were duly saved as to the instructions given in behalf of the plaintiff, as well as to the refusal of those requested by defendant and refused by the court.

So far as it may become necessary to do so, the instructions and additional facts will be set forth in the opinion. Twenty-two grounds are alleged in the motion for new trial. Reference will be made in the opinion to such of them as it may be necessary to discuss.

I. Appellant assigns as error the action of the trial court in overruling appellant's motion to strike out certain portions of the amended petition upon which this case was tried. The motion was based upon the ground that the portions mentioned were a departure from the cause of action theretofore stated. No time need be spent on this question, for the reason that appellant, by filing an answer and proceeding to trial upon the merits, waived the objection, even if the amendment did constitute a departure. [Schroeder v. Edwards, 267 Mo. 459, l. c. 482; Castleman v. Castleman, 184 Mo. 432, l. c. 440; Scovill v. Glasner, 79 Mo. 449 l. c. 454.] If appellant desired to preserve this point, it should have stood upon its motion. Not having done so, it cannot now complain.

*Departure.*

II. Appellant asserts that the court erred in not taking the case from the jury upon appellant's demurrer to the evidence. This contention is based, in part at least, upon the claim that the evidence conclusively shows that the deceased was guilty of contributory negligence. Without now determining the question of the negligence of the deceased, it suffices as to this contention to say that in suits under the Federal Employers' Liability Act, contributory negligence does not bar a recovery. [Grand Trunk Ry. Co. v. Lindsay, 233 U. S. 42; Sells v. A., T.

& S. F. Ry. Co., 181 S. W. (Mo.) 106, l. c. 114; Fish v. Railroad, 263 Mo. 106, l. c. 122.]    We rule this point against appellant.  Discussion of whether or not decedent was or was not engaged in interstate commerce is reserved for the next paragraph.

III.   Appellant claims that the record fails to show that either appellant or decedent was engaged in interstate commerce, and that this action must therefore fail. That appellant was a common carrier engaged in interstate commerce is undisputed.   The evidence in behalf of plaintiff tends to show that decedent was time-keeper for a group of workmen in the employ of appellant; that he was employed by the month; that his duties required him to keep a record of the men employed, to check them up at least twice daily; to make two daily reports to his superiors, one by telegraph and one by mail; that these duties usually consumed his time until about seven or eight o'clock in the evening; that he was killed at about 6:30 p. m.; that he was, at the moment when death overtook him, on his way to make his daily telegraphic report; that during the day upon which he died, the men under his observation were employed in part in constructing a temporary track and in part in work upon the main track; and that this main track was used by appellant in interstate commerce.   The train which killed decedent was an intrastate train.   Upon these facts, the question arises whether or not decedent was engaged in interstate commerce within the meaning of the Federal Employers' Liability Act.   If he was not, appellant's demurrer to the evidence should have been sustained.

Upon this proposition the facts are substantially the same as upon the former appeal.   In determining this question, which is one by no means free from difficulty, it may be said that the act here in question is a humane statute, and should receive a liberal interpretation.

"Enacted as the Federal Employers' Liability Act was to bring the United States law up to the humani-

Crecelius v. Milwaukee Ry. Co.

tarian level of the laws of many of the states, by abolish-
ing the unjust and irritating fellow-servant rule, by
modifying the often harsh contributory-negligence rule,
and by otherwise changing the common-law liability of
interstate rail carriers to their employees, it should
receive a liberal construction to promote its important
purpose.'' [Dissenting opinion of Mr. Justice CLARKE,
in Hull v. Philadelphia & R. Ry. Co., 40 Sup. Ct. Rep.
358, 1. c. 361.]

It is obvious, of course, that the work of a time-
keeper is an important element in the operation of a
railroad, and an invariable incident of construction and
reconstruction work in that line of business. It is
perhaps safe to say that the cost of doing such work
without a time-keeper when, as in this instance, large
numbers of men are employed, would be very largely
increased. Sound business judgment, as evidenced
by universal practice, dictates that the services of
a time-keeper are an essential element in such work
as was here being done. It is certainly as much so as the
work of the seal-clerk in St. L. & San Francisco Ry. v.
Seale, 229 U. S. 156, where such a clerk was held to be
engaged in interstate commerce, even though the station
where the work of checking up the cars was being done
was the final destination of those cars. The general
principles laid down by the United States Supreme
Court are applicable to the facts here involved, and
in harmony with what we have said. In substance, that
court has said that when the work being done ''was in
the nature of a duty resting upon the carrier'' (Pedersen
v. Del., Lack. & West. Railroad., 229 U. S. 146, 1. c. 151),
or when the work being performed ''was a minor task
which was essentially a part of a larger one'' (Pedersen
case, supra, 1. c. 152) or when the act in question ''is
so directly and immediately connected with such busi-
ness, [i. e., interstate commerce] as substantially to form
a part or a necessary incident thereof'' (N. Y. Cent. &
H. R. Railroad Co. v. Carr, 238 U. S. 260), or when the

employee was engaged in interstate commerce at the time of the injury, ''or in work so closely related to it as to be practically a part of it'' (Shanks v. Del., Lack. & W. Railroad, 239 U. S. 556, 1. c. 558; C. B. & Q. Ry. Co. v. Harrington, 241 U. S. 177, 1. c. 180)—then, in all such cases, the employee is said to be engaged in interstate commerce. Applying these principles as the test, we think that in the case in hand the decedent may properly be said to have been so engaged. In so saying we are conforming to the views of this court en Banc upon this question on the former appeal. Additional reasons and authorities are set forth in that opinion, and need not be repeated here.

IV. As upon the former appeal, appellant insists that the stipulation which is quoted in full in the former opinion, concludes respondent from contending that decedent was engaged in interstate commerce. This stipulation was offered in evidence upon the second trial also, but, as upon the first trial, both parties to all intents and purposes ignored it. Evidence was introduced on both sides without regard to the stipulation and without objection on that ground. On the former appeal we held that both parties had waived the stipulation. Much the same situation is presented, in this regard, now as then; and our conclusion is also the same as before and for the same reasons. We rule this contention against appellant.

*Stipulation: Waiver.*

V. Appellant complains of instruction numbered two, given in behalf of respondent. This instruction relates to the use of the main and passing tracks above mentioned by the employees who were housed in the bunk cars at Morley, and imposes upon the appellant the duty of using ''reasonable care and caution for the personal safety of the occupants of said bunk cars while crossing said tracks.'' The point of the objection is that, as appellant claims, ''to show user, it must be shown that the public as well

*Instruction: User.*

as the employees used the track at the point of accident."
This was an unfenced railroad yard adjoining the little
town of Morley. The town lay to the north of the tracks.
Something more than one hundred men, mostly Arme-
nians and Bulgarians, were housed in the bunk cars
south of the tracks. They were compelled to cross the
tracks to go to the stores, the post-office, the telegraph
office, to the hydrant when they obtained water, to the
yard where they obtained coal, and to the only toilet
facilities provided for them. Appellant well knew these
facts and knew also that these men were constantly
crossing these tracks for these purposes. Upon the
plainest and most common principles of humanity,
appellant was bound to use reasonable care and caution
to avoid injuring them. They were its servants, housed
by it in a place of its own selection. Whatever dangers
were inherent in the situation—and that there were
some, this record bears evidence—were dangers created
by appellant and fully known to it. The lives of even the
humblest strangers within our gates are tenderly re-
garded by the law. The fact that this record does not
show that the general public also traversed these tracks
does not absolve appellant from the exercise of the de-
gree of care imposed by this instruction. Appellant
cites us to no authority which so holds, and we would be
loath to follow such an authority if it were cited. Degonia
v. Railroad, 224 Mo. 564, l. c. 590, cited by appellant,
is not a parallel case. User was neither pleaded nor
proven in that case. It is both pleaded and proven here.
We are not unmindful of the rule pronounced in Gabal
v. Railroad, 251 Mo. 257, and in Aerkfetz v. Humphreys,
145 U. S. 418, and similar cases, with reference to the
status of employees, but we are not now dealing with
the question of contributory negligence, but with the
single objection above noted, to this one instruction.
There is evidence in this record that it was not usual
for the work train to be at this hour upon the passing
track where decedent was killed, and there is also evi-

dence that the fatal train was running at a rate of speed which was excessive and dangerous, under the circumstances. There is no merit in the objection to this instruction. [Kippenbrock v. Railroad, 270 Mo. 479, l. c. 484.]

VI. Appellant assigns error in the action of the court in "permitting expert testimony as to what was the negligent running of engines in the Morley yard." This assignment is hardly an accurate description of the testimony. Several witnesses who were shown to have had large experience in railroad work, were asked and permitted to answer questions relating to the reasonable and proper rate of speed at which an engine should be driven under the conditions existing at the time decedent met his death, and also as to whether or not it was reasonable and proper to have some one stationed on the front end of the gondola car which was, on this occasion, being pushed through the yard at Morley by the work engine. The competency of these witnesses is not attacked. The objection is taken solely to their evidence. They testified, in substance, that a reasonable and proper method of doing the work involved would have been to limit the speed of the engine to six or seven miles per hour, and that a brakeman should have been stationed on the front end of the gondola car, if the work were to be done in a reasonably safe and proper manner. In this we think there was no error. The manner of doing work of this character was a proper subject for expert evidence. [Meily v. Railroad, 215 Mo. 567, l. c. 589.] The witnesses were competent and the questions were in proper form. [Kaminski v. Tudor Iron Works, 167 Mo. 462, l. c. 466; Meily v. Railroad, supra, l. c. 593.] We rule this contention against the appellant.

VII. One question remains to be determined. Appellant affirms that the damages assessed are excessive. This contention is one which seems not to have been

*Expert Testimony.*

**Excessive Verdict.** urged upon the former appeal, although the same sum was allowed by the trial court then as in this instance. It is a question which gives us serious pause.

Instruction number fourteen given in behalf of respondent upon the measure of damages is as follows:

"If under the evidence and the instructions, the jury finds for the plaintiff, and if the jury furthur finds from the evidence that the wife and child of Walter Crecelius were dependent upon him, and that they have sustained financial or pecuniary loss by reason of his death, then, in assessing the damages, if any, the jury may take into consideration the age of deceased, Walter Crecelius, his occupation, the condition of his health and his habits, and his earning capacity, as shown by all the evidence before you on said subjects, and you may take into consideration such a sum as you believe from the evidence will reasonably compensate the plaintiff for the loss of such pecuniary benefits as the evidence shows she, as the wife of said Walter Crecelius, and her child, had reasonable expectation of receiving from him, basing such assessment on financial loss as shown by the evidence, not to exceed in all, however, the sum of fifty thousand dollars."

Appellant criticizes this instruction in general terms, but we think it was well enough. [Boyd v. Railroad, 249 Mo. 110, l. c. 126.]

The serious question is as to the amount allowed under this instruction. The decedent was shown to be thirty-four years of age, with a life-expectancy of thirty-two years, of sound health, industrious, and of good habits. He was earning a salary of about $52 per month and subject to no bodily infirmity, except that he was somewhat deaf. There is some more or less vague evidence that he had been promised an increase of salary to $100 per month, but this was a matter of expectancy rather than of fact.

Respondent is entitled to recover reasonable compensation for the pecuniary loss sustained by herself and

daughter as the result of the death of the husband and father. No element of punitive damages enters into the case, nor is there any allowance for suffering either mental or physical on the part of the deceased, nor for any mental anguish resulting to plaintiff or her daughter. Cold as the doctrine may seem, the assessment is one which contemplates a calculation of the money value, to plaintiff and her daughter, of the life of the husband and father. Furthermore, this sum must also, under the provisions of the Federal Employers' Liability Act, be reduced, if decedent's own negligence contributed to his death, in the proportion that such negligence on his part was a factor in the total negligence which culminated in his untimely taking-off. That the decedent was guilty of contributory negligence, we decided on the former appeal, and nothing appears in the present record to justify a different finding. The judgment below was for $25,000. We must take into account the fact that the living expenses of decedent himself would have to be paid out of his earnings, and we must make proper deduction for his contributory negligence. Viewed even with a lenient eye, the judgment is obviously excessive. To reduce the amount allowed by two presumably honest and intelligent juries for the loss sustained by the negligent slaughter of a husband and father, is a hard and ungrateful duty. But duty is not to be shirked merely because it is difficult or unpleasant. We have endeavored to consider this question with care. We have taken into consideration the fact that deceased, were he alive now, would probably be earning much more than when he was killed, and we are not unmindful of the evidence touching upon the promised increase in his salary, but, on the whole, we are constrained to believe that this verdict ought to be reduced to $15,000.

If, therefore, the respondent will within ten days enter a *remittitur* of $10,000 as of the date of this judgment, the judgment will be affirmed. Otherwise, the cause will be reversed and remanded.

It is so ordered. All concur; *Woodson, J.,* absent.