## Illinois Central Railroad Company v. Evans.

(Decided June 1, 1916.)

### Appeal from Ohio Circuit Court.

1. Railroads—When Under Duty to Avoid Injuring Employes on Track.—A railroad company in the operation of its trains does not owe to its employes, whose business it is to be advised of the movement of trains and to keep the track free from obstructions, the duty of lookout or warning, or any other duty than to avoid injuring them after their peril has been discovered.

2. Railroads—Duty of Trainmen to Employes on Track When Warned of Their Presence.—Where an engineer is warned of the presence of a hand-car on the track before he discovers it, it is his duty to keep a sharp lookout and to have the train under such control as that it can be stopped within a reasonable distance.

3. Railroads—Duty to Employes on Track—Warning Signals.—Where a section foreman standing by the track gave to an engineer on a passing train a signal in use for many years and which was understood by trainmen although not in the book of rules, that there was a hand-car on the track ahead of the train, it was the duty of the engineer, who understood and acknowledged the signal, to anticipate the presence of the hand-car on the track and act accordingly.

4. Railroads—Duty of Section Foreman to Keep Track Clear of Obstructions.—A section foreman in charge of a hand-car is not a trespasser on the track, but it is his duty to keep it out of the way of trains.

5. Railroads—When Negligence of Employe Will Not Excuse Company for Injury to Him—Warning—Discovery of Peril.—The rule that the negligence of an employe will not excuse the railroad company if his peril was discovered in time to avoid the injury applies to a state of case in which the engineer has warning of the presence of the employe on the track before he discovered him.

6. Railroads—Care to be Exercised by Employe in Removing Hand-car from Track When Train Approaching.—When the foreman of a section crew saw a train approaching, it was his duty to attempt to remove the hand-car from the track, and if in attempting to remove it he exercised such care as might be reasonably

expected of a person of ordinary prudence, his act in making the attempt will not be contributory negligence.

7. Appeal and Error—Argument—How Improper Argument Must Appear in Record to be Available.—It is not sufficient to show the misconduct of counsel in argument of case for the first time in the motion and grounds for a new trial, supported by affidavits. It must appear in the bill of exceptions, certified to by the trial judge.

TRABUE, DOOLAN & COX, R. V. FLETCHER, H. P. TAYLOR, S. L. BARBER and J. BLAKEY HELM for appellant.

HEAVRIN & KIRK for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee, Evans, in June, 1914, was a section foreman in charge of a portion of the track of the appellant railroad company. On the morning of June 14, Evans, in company with three section hands, left the section house at Rosine on a hand car and started north on the track with the intention of going to the place of work about two and one-half miles from the section house. When they were within a short distance of their destination they discovered a passenger train also going north coming behind them at a high rate of speed, and they stopped the handcar at once and made an effort to take it off the track. The four men had partly removed the hand car from the track when the near approach of the train caused the three section men to leave the hand car, but Evans continued his efforts to get it off and only abandoned it when the train was within a short distance. The engine hit the handcar and some part of it struck Evans, who was only a few feet away, inflicting upon him very serious injuries.

To recover damages for the injuries sustained, he brought this suit, and at a trial had in October, 1914, there was a verdict in his favor for $1,600.00. This verdict was set aside by the trial judge and a new trial was granted, and there is no complaint of this ruling on the part of the railroad company.

At the second trial in April, 1915, there was a judgment in favor of Evans for five thousand dollars, and from that judgment this appeal is prosecuted.

The grounds relied on for reversal are: that the court should have instructed the jury to return a verdict for the railroad company; that error was committed in the

admission of incompetent evidence and in giving instructions; that the attorney for Evans was guilty of misconduct in the argument of the case, and that the verdict is excessive.

The reason assigned for insisting that there should have been a directed verdict in favor of the company is that it was the duty of Evans as section foreman in charge of the track to be advised of the movement of trains on his section and to keep the track clear of obstructions that might interfere with the trains.. Assuming this to be true the argument is made that his negligence in having the hand car on the track at the time it was struck was the direct and proximate cause of his injury and there could be no recovery in his behalf, as the engineer in charge of the train was under no duty to look out for the presence of the handcar or take any steps to protect Evans until his peril was discovered. In support of this, reliance is had on C., N. O. & T. P. Ry. Co. v. Swann, 149 Ky. 141; Coleman v. Pittsburgh Ry. Co., 139 Ky. 559; C., N. O. & T. P. Ry. Co. v. Harrod, 132 Ky. 445; Conniff v. Louisville, H. & St. L. Ry. Co., 124 Ky. 763; L. & N. R. R. Co. v. Hunt, 142 Ky. 778; Blankenship v. Norfolk & Western Ry Co., 147 Ky. 260. In these cases it was, in substance, laid down that a railroad company in the operation of its trains does not owe to employes, whose business it is to be advised of the movement of trains and to keep the track free from obstructions, the duty of lookout or warning, or any other duty than to avoid injury to them after their peril has been discovered.

But there are material facts shown in the evidence that take this case out of the rule announced in the cited cases. There is evidence that the engineer was warned that he might meet a hand car on the track, when he was about two miles from it, and evidence that the engineer, after having discovered the presence of the hand car on the track, could have stopped the train before striking it or else could have slowed down the speed to such an extent that the men could have removed the hand car from the track before it was struck.

Evans was not a trespasser. He had the right to be with his hand car on the track, although it was his duty to keep out of the way of trains. Chesapeake & Ohio Ry. Co. v. Montjoy, 148 Ky. 279. It was also the duty of the engineer in charge of the train, if he was warned some distance before reaching the hand car that it would

likely be on the track, to keep a sharp lookout for its presence and to have the train under such control as that it could be stopped within a reasonable distance. And even if no warning of this kind was given, it was of course his duty, after the presence of the hand car on the track was discovered, to use ordinary care with the means at his command to prevent striking it.

Upon the point that the engineer had warning that the hand car was on the track some time before it was reached, there was introduced in behalf of Evans one William Otto who had been a section foreman for the appellant railroad company for about thirty-five years and was at the time of the accident the section foreman in charge of that division, but on this day on account of his sickness Evans was acting as foreman in his place. This witness testified that he was at Rosine when the hand car left there and remained until this fast train passed. That when he saw the train, which was about two hours late, coming he knew the hand car was only a short distance ahead, and apprehending that the train might collide with it, he stood near the track and gave the engineer signals indicating the presence of the hand car on the track ahead of the train. That the signals he gave although not in the book of rules had been in common use on the road for many years and their meaning was understood by all engineers and trainmen. That it was usual and customary when such signals were given to an engineer for the engineer to acknowledge their receipt by sounding the whistle and this the engineer on the train did.

The engineer admitted receiving the signal from Otto, whom he knew as the foreman of that section, but denied that he understood the purpose of the signal or responded to it with the sound of his whistle or that he understood from the signal that there was a hand car on the track ahead of the train. The signals given by Otto under the circumstances stated by him were we think sufficient to authorize the submission of this issue to the jury, which was done in the following instruction:

"No. 8. You are further instructed that if you believe from the evidence that the engineer in charge of said train at the time complained of had received and understood a signal of caution, which indicated that employes were on the track ahead, as described in the evidence, and further that it was the duty of said engineer after receiv-

ing said signal, if he did so receive it, to keep a reasonable, careful lookout for said employes and to keep his engine and train under reasonable control until said employes were passed, and that if said engineer failed to manage and operate his said engine and train in that prudent and cautious manner that an ordinarily prudent person would have operated same under like or similar circumstances, and that as a result of the failure, if any, to so manage and operate said train, the plaintiff was injured, then the law is for the plaintiff, and you will so find.''

This instruction we think submitted correctly the question of the warning received by the engineer and his duty in respect thereto. If the engineer had not received this warning, he would have been under no duty to anticipate the presence of the hand car on the track. He might well have assumed that the persons in charge of the hand car would keep it out of the way, but when he received notice that the hand car was on the track ahead of the train, then it was his duty, as said in the instruction, to manage and operate his engine and train in a prudent and cautious manner, and if as a result of his failure to do this the plaintiff was injured, the fault that caused the injury was primarily with the engineer and not the men on the hand car.

As we have stated, the men on the hand car were not trespassers. Their duties required them to operate the hand car on the track and also to keep it out of the way of trains. But at the same time this duty did not excuse the engineer on the train from failing to take such precautions as a prudent person would have exercised to avoid striking the hand car which he knew was on the track ahead of him. The train was two hours behind its regular schedule. The section men in the course of their duty were required to go to the place they were going. They did not know when this train would come. They did not, in fact, know that it had not passed on time. And it is further shown that they were exercising unusual care to discover the approach of trains, which were likely to come on them at any time.

Under the circumstances of this case we think the jury were authorized to find, as they did do, that the engineer was guilty of negligence in operating his train at the high rate of speed at which it was running when the hand car was discovered. Evidently he was exercis-

ing no care at all to prevent striking the hand car, apparently for the reason given by him that he did not anticipate its presence on the track. If, however, he had given heed to the signal of Otto and had been operating his train at a reasonable speed in anticipation of overtaking the hand car, it is quite clear under the evidence that after the hand car was discovered he could have stopped the train before striking it, or at least slowed the speed down to such an extent that the men would have had time to take the car from the track, as they could and would have done if they had had a few moments longer time.

It is a familiar rule and often applied in the law of negligence that however much the negligence of the injured party may have contributed to his injures, this will not excuse the person injuring him if this person after discovering his peril could by the exercise of ordinary care have avoided the injury; and there seems to us no reason why this principle should not be extended to embrace the facts of a case like this. Plainly the company would be liable if it appeared that the engineer, after discovering the presence of the hand car on the track, could, by the exercise of ordinary care, have stopped his train in time to have avoided striking it and failed to do so; and it seems equally clear that when he received the warning that the hand car was on the track, before discovering its presence, it was his duty to exercise ordinary care to prevent a collision with it, and if he had been exercising this degree of care the evidence shows the accident would not have happened. Tennessee Central R. Co. v. Cook, 146 Ky. 372.

But putting aside the evidence as to warning, there is some evidence that after the engineer actually discovered the presence of the hand car on the track he could, by the exercise of ordinary care, have avoided the collision, although the engineer testified that he could not, and although the weight of the evidence on this issue may be with the engineer, it was yet proper to submit to the jury in the manner the court did this issue.

It is also urged that if Evans had abandoned the car as the other men did, he would not have been injured, and therefore his injuries were the result of his recklessness in continuing his attempts to remove the car until the approaching train was within a few feet of it. Upon this issue the court instructed the jury as follows:

"No. 5. You are further instructed that it was the duty of the plaintiff, together with his crew, upon the occasion of the injury complained of, to remove the hand car from the track, if it could be done consistently with the exercise of ordinary care for his own safety; so, if you believe from the evidence that the plaintiff in attempting to remove the hand car from the track at the time of the injury exercised such care as might be reasonably expected of a person of ordinary prudence, situated as he was under all the circumstances surrounding plaintiff at that time, as described to you in this evidence, his act in making this attempt cannot be imputed to him as contributory negligence."

This instruction we think presented in substantially correct form the duty of Evans and the care he was required to exercise. Men occupying the position of Evans who put their lives in peril as he did for the purpose of saving the property and lives of others are to be commended for their courage, and the law in its regard for the loyalty of servants who perform deeds like this is not willing that they should go unremunerated if while injured in the attempt to save life and property they exercise such care for their own safety as might be expected of a person of ordinary prudence so situated. Chesapeake & Ohio Ry. Co. v. Lang, 135 Ky. 76.

The incompetent evidence complained of consisted in evidence given by Mark London as to statements made to him by the engineer a few days after the accident. He testified that the engineer told him at a time and place fixed with sufficient definiteness that "if it had not been for old man Otto I would have killed the whole bunch." This evidence was admitted, as the jury were at the time told, only for the purpose of contradicting the engineer, who denied having made the statement, if it did so contradict him, and we think it was competent for this purpose as a circumstance tending to show that the engineer understood the signal he received from Otto. Nor do we think the evidence as to the schedule time of the train was incompetent.

The verdict is also complained of as being excessive, and in support of this ground much reliance is placed on the fact that on the first trial of the case the jury assessed the amount of recovery at only $1,600.00. The reason for this difference in the amount of the assessment is readily explained when the evidence of Evans and the

physicians who testified in his behalf is considered. On the first trial, which took place a few months after the accident, neither Evans nor the doctors could tell with any reasonable certainty whether the injuries Evans received were permanent or only temporary; but on the next trial, nearly a year after the accident, it was shown in a very satisfactory way that his condition was much more serious than it appeared to be on the first trial, and the medical testimony on the second trial was to the effect that his injuries were not only serious but permanent. Without setting out the nature or extent of his injuries and taking into consideration the age, habits and character of Evans and the serious and permanent nature of his injuries, the verdict was no more than reasonable compensation.

There is a further minor objection to the alleged misconduct of counsel which was first brought to the attention of the court in the motion and grounds for a new trial, supported by affidavits. Aside from the fact that this argument was not so serious an impropriety as would authorize a reversal, the objection was not made in such time or manner as to make it available as error in this court. In Bannon v. Louisville Trust Co., 150 Ky. 401, and Southern Ry. v. Thacker, 156 Ky. 483, it was said that it is not sufficient to show misconduct of counsel in the argument of a case in the motion and grounds for a new trial, supported by affidavits, but it must appear in the bill of exceptions, certified to by the trial judge.

Wherefore the judgment is affirmed.