(March 6, 1924.)

LIZZIE SCHUPPENIES, Administratrix of the Estate of AUGUST SCHUPPENIES, Deceased, for the Use and Benefit of LIZZIE SCHUPPENIES, Surviving Widow of AUGUST SCHUPPENIES, Deceased, and ROBERT A. SCHUPPENIES and CARL A. SCHUPPENIES, Surviving Minor Children of AUGUST SCHUPPENIES, Deceased, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

[225 Pac. 501.]

RAILROADS—FEDERAL EMPLOYERS' LIABILITY ACT—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF RISK — EMPLOYEE — SECTION-HAND—UNUSUAL PLACE TO WORK—INCREASED RISKS—FAILURE TO WARN EMPLOYEES—INTERROGATORIES—QUESTIONS OF LAW AND FACT.

1. Where the jury, in answer to special interrogatories submitted to it by the court, found that the engine bell was ringing at the time of the accident but that the whistle was not sounded

Publisher's Note.

Constitutionality, application and effect of federal Employers' Liability Act, see notes in 17 Ann. Cas. 331; 47 L. R. A., N. S., 38; 48 L. R. A., N. S., 987; L. R. A. 1915C, 47.

Burden of proving contributory negligence under federal Employers' Liability Act, see notes in Ann. Cas. 1916D, 232; 33 L. R. A., N. S., 1218.

within hearing distance of the deceased, and sufficient competent evidence appears to justify such findings, this court is bound thereby.

2. The jury having found that the train which struck the deceased was traveling at not less than eight nor more than fifteen miles per hour at the time of the accident, in answer to special interrogatories submitted to it, taking into consideration the fact that the track east of the point of collision was straight; that the view was unobstructed; that such rate of speed was not in violation of any law or ordinance; that it was not in excess of the rate of speed necessary to the proper transaction of the business of the railroad company, and that it was the customary rate of speed at which trains were operated when approaching the depot, *held* that such rate of speed was not excessive.

3. Where an engineer, from his seat in the cab of the engine, was in a position to have seen the deceased in time to warn him of his impending danger, and by the exercise of ordinary care could have seen him but admitted that he did not see him, whether he was guilty of negligence in failing to observe the deceased was a question properly submitted to the jury.

4. Where the fireman of the engine that struck deceased saw him near the tracks on which the engine was running, about 800 feet before he was struck but failed to notify the engineer of his presence or to attempt to warn the deceased, *held* that the question of negligence on the part of the fireman was properly submitted to the jury.

5. Whether a section employee, taken from his usual place of work on a branch line and put to work in railroad yards on the main line where he had never worked before, being heavily clad and wearing a cap with ear-flaps, where in the immediate vicinity two passenger trains and a freight train were moving around, the engine bells and whistles of the engines drawing such trains and the switching of freight-cars making considerable noise, and the noise of another approaching train being deadened by a heavy fall of snow, was guilty of contributory negligence, *held* to be a question of fact for the jury.

6. It is to be presumed that if the jury found the deceased guilty of contributory negligence, such fact was taken into consideration by it in arriving at the amount of damages awarded by its verdict.

7. Contributory negligence is not a defense to an action based upon the federal Employers' Liability Act and operates only in mitigation of damages.

8. The federal Employers' Liability Act, being a humane statute, should receive a liberal interpretation.

38 Idaho.—43

APPEAL from the District Court of the Fourth Judicial District, for Lincoln County.   Hon. H. F. Ensign, Judge.

Action to recover from railroad company for wrongful death.   Judgment for plaintiff.   *Affirmed.*

George H. Smith, H. B. Thompson and John O. Moran, for Appellant.

It is not negligent as to a section laborer to operate a train at any rate of speed that the company's business may require.   (*Land v. St. Louis & S. F. R. Co.,* 95 Kan. 441, 148 Pac. 612; *Hoffard v. Illinois Cent. R. Co.,* 138 Iowa, 543, 110 N. W. 446, 16 L. R. A., N. S., 797; *Illinois Cent. R. Co. v. Willis,* 123 Ky. 633, 97 S. W. 21; 2d Dec. Digest, "Master and Servant," sec. 137.)

A railroad company is not guilty of negligence in failing to give warning of the approach of its trains in a railroad yard.   (*Randall v. Baltimore & O. R. Co.,* 109 U. S. 478, 3 Sup. Ct. 322, 27 L. ed. 1003; *Southern R. R. Co. v. Gray,* 241 U. S. 333, 36 Sup. Ct. 558, 60 L. ed. 1030; *Ciebattone v. Chicago Great West. Ry. Co.,* 146 Minn. 362, 178 N. W. 890.)

Those in charge of the operation of an approaching train have the right to assume that upon signals being given, section laborers and other persons along the track will hear and observe the signals, and that they will not go or remain in a perilous position when a slight effort would carry them to a place of safety, and consequently that they will step to a place of safety before the train reaches them.   (*Aerkfetz v. Humphreys,* 145 U. S. 418, 12 Sup. Ct. 835, 36 L. ed. 758; *Neil v. Idaho & W. N. R. Co.,* 22 Ida. 74, 125 Pac. 331, and authorities cited; 3 Elliott on Railroads, 2d ed., sec. 1791; *Sierzchula v. Chicago & Alton R. Co.,* 209 Ill. App. 15; *Williams v. Southern Pac. Co.,* 173 Cal. 525, 160 Pac. 660; *Southern R. Co. v. Gray,* 241 U. S. 333, 36 Sup. Ct. 558, 60 L. ed. 1030.)

"In the absence of special circumstances, an employee working on the tracks of a railroad must look out for trains

and take care of his own safety." (*Carter v. St. Louis & S. F. R. Co.* (Mo. App.), 249 S. W. 124; *Sears v. Texas & N. O. R. Co.* (Mo. App.), 247 S. W. 602; *Kirkland v. Bixby,* 282 Mo. 462, 222 S. W. 462; *Newkirk v. Pryor* (Mo. App.), 183 S. W. 682.)

"Ordinarily trainmen do not owe any duty of keeping a lookout, to give signals of approach or to reduce the speed of trains in anticipation that employees engaged in repairing the tracks may be found upon the tracks, and as to such employees owe the duty of exercising ordinary care to prevent injuring them only when they are discovered in situation of danger." (*Cincinnati, N. O. & T. P. Ry. Co. v. Jones' Admr.,* 171 Ky. 11, 186 S. W. 897; *Bell's Admx. v. Chesapeake & O. Ry. Co.,* 161 Ky. 466, 170 S. W. 1180; affd., 245 U. S. 629, 38 Sup. Ct. 62, 62 L. ed. 519; *Hines v. Hopkins,* 194 Ky. 441, 239 S. W. 792; *Hines v. Pershin* (Okl.), 215 Pac. 599; Labatt on Master and Servant, 2d ed., sec. 1248; *Curtis v. Erie R. Co.,* 267 Pa. St. 227, 109 Atl. 871; *Riccio v. New York, N. H. & H. R. Co.,* 189 Mass. 358, 75 N. E. 704; *Dyerson v. Union Pac. R. Co.,* 74 Kan. 528, 87 Pac. 680, 7 L. R. A., N. S., 132.)

"An engineer is not required to anticipate that sectionmen will remain upon the track in the very face of known danger from approaching trains, and if they do it is at their own risk, although no signals are given." (*Ginnochio v. Illinois C. R. Co.,* 155 Mo. App. 163, 134 S. W. 129; *Nivert v. Wabash Ry. Co.,* 232 Mo. 626, 135 S. W. 33; *Waymire v. Atchison T. & S. F. Ry. Co.,* 107 Kan. 90, 190 Pac. 588; *Director-General v. Hubbard,* 132 Va. 193, 111 S. E. 446; *Louisville & N. Ry. Co. v. Hyatt,* 191 Ky. 85, 229 S. W. 101; *Rigley v. Wabash Ry. Co.* (Mo.), 204 S. W. 737; *Louisville & N. R. Co. v. Seeley,* 180 Ky. 308, 202 S. W. 638; *Southern Ry. Co. v. Blackwell,* 20 Ga. App. 630, 93 S. E. 321; *Ingham v. New York O. & W. R. Co.,* 182 App. Div. 112, 169 N. Y. Supp. 346.)

"Sectionmen upon railroads assume the risk of trains of all sorts, 'regular' or 'wild,' running over the tracks at all times, at such rates of speed as are attainable, without notice or warning, except such as results incidentally." (*Ives v.*

*Wisconsin Cent. R. Co.,* 128 Wis. 357, 107 N. W. 452; *Pennsylvania R. Co. v. Wachter,* 60 Md. 395; *Sullivan v. Fitchburg etc. R. Co.,* 161 Mass. 125, 36 N. E. 751.)

Bothwell & Chapman, for Respondent.

Appellant is guilty of negligence in that at the time and place in question it operated its train No. 23 at a rate of speed in excess of the usual and customary rate of speed of that train. (*Burrow v. Idaho-Wash. N. R. Co.,* 24 Ida. 652, 135 Pac. 838; *Kinzell v. Chicago, M. & St. P. R. Co.,* 33 Ida. 1, 190 Pac. 255; *Hardwick v. Wabash R. Co.* (Mo.), 168 S. W. 328; *Rockhold v. Chicago, R. I. & P. Ry. Co.,* 97 Kan. 715, 156 Pac. 775; *Olthoff v. Great N. R. Co.,* 135 Minn. 72, 160 N. W. 206; *Tober v. Pere Marquette R. Co.,* 210 Mich. 129, 177 N. W. 385.)

Under the federal Employers' Liability Act the judgment cannot be reversed or a recovery barred on account of the defense of contributory negligence; the question of contributory negligence can only go to the diminution of damages. (*Chicago G. W. R. Co. v. McCormick,* 200 Fed. 375, 118 C. C. A. 527, 47 L. R. A., N. S., 18; *Colosardo v. Central R. Co.,* 180 Fed. 832, 192 Fed. 901; *Carter v. Kansas City So. R. Co.* (Tex. Civ.), 155 S. W. 638; *Charleston & W. C. R. Co. v. Brown,* 113 Ga. App. 744, 79 S. E. 932; *Horton v. Seaboard Airline R. Co.,* 157 N. C. 146, 72 S. E. 958; *Neil v. Idaho & W. N. R. Co.,* 22 Ida. 74, 125 Pac. 331; *Norfolk & W. R. Co. v. Ernest,* 229 U. S. 114, Ann. Cas. 1914C, 172, 33 Sup. Ct. 654, 57 L. ed. 1096; *White v. Central Vermont R. Co.,* 87 Vt. 330, 89 Atl. 618; *Chadwick v. Oregon W. R. & N. Co.,* 74 Or. 19, 144 Pac. 1165; *New York C. & St. L. R. Co. v. Niebel,* 214 Fed. 952, 131 C. C. A. 248; *Louisville & N. R. Co. v. Winkler,* 162 Ky. 843, 173 S. W. 151; *Chicago, R. I. & P. R. Co. v. Brown,* 229 U. S. 317, 33 Sup. Ct. 840, 57 L. ed. 1204; *St. Louis I. M. & S. R. Co. v. Sharp,* 115 Ark. 308, 171 S. W. 95; *Ramaswamy v. Hammond Lumber Co.,* 78 Or. 407, 152 Pac. 223; *Greenwell v. Chicago M. & St. P. R. Co.* (Mo.), 224 S. W. 404; *Crecelius v. Chicago, M. & St. P. R. Co.,* 284 Mo. 26, 223 S. W. 413; *Jetter v. St. Joe*

*Terminal R. Co.* (Mo.), 193 S. W. 956; *Sinderson v. Payne,* 151 Minn. 142, 186 N. W. 237.)

Deceased did not assume the risk of injury by being struck by a train which was not operated in its usual and customary manner, or which was negligently operated; the burden of proving assumption of risk in this case was upon appellant; and whether deceased assumed the risk of this particular injury was a question for the jury, and its verdict will not be disturbed by this court on appeal. (*Hawley v. Chicago, B. & Q. R. Co.*, 133 Fed. 15, 66 C. C. A. 216; *Millen* v. *Pacific Bridge Co.*, 51 Or. 538, 95 Pac. 196; *Hartley v. Chicago & A. R. Co.*, 197 Ill. 440, 64 N. E. 382; *Baltimore & O. S. W. R. Co. v. Walker*, 41 Ind. App. 588, 84 N. E. 730; *St. L., I. M. & S. R. Co. v. Birch*, 89 Ark. 424, 117 S. W. 243, 28 L. R. A., N. S., 1250; *Smith v. C. R. I. & P. R. Co.*, 82 Kan. 136, 107 Pac. 635, 28 L. R. A., N. S., 1255; *Cnkovch v. Success Min. Co.*, 30 Ida. 623, 116 Pac. 567; *Chicago, R. I. & P. R. Co. v. Ward*, 252 U. S. 16, 40 Sup Ct. 275, 64 L. ed. 430; *Seaboard Airline R. Co. v. Horton*, 233 U. S. 492, Ann. Cas. 1915D, 475, 34 Sup. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1; *Neil v. Idaho W. N. R. Co.*, 22 Ida. 74, 125 Pac. 331; *Cervona v. Delaware, L. & W. R. Co.*, 35 N. J. L. 246, 114 Atl. 14; *Lehigh Valley R. Co. v. Scanlon*, 259 Fed. 137; *Kinzell v. C. M. & St. P. R. Co., supra; Vaundry v. Chicago & N. W. R. Co.*, 130 Wis. 233, 109 N. W. 926; *Pennsylvania Co. v. Stalker*, 67 Ind. App. 329, 119 N. E. 163; *Preston v. Union P. R. Co.*, 292 Mo. 442, 239 S. W. 1080; *Stool v. Southern P. R. Co.*, 88 Or. 350, 172 Pac. 101; *Schroder v. Montana Iron Works*, 38 Mont. 474, 100 Pac. 619; *Benzing v. Steinway*, 101 N. Y. 547, 5 N. E. 449; *Rase v. Minneapolis, St. P. etc. R. Co.*, 107 Minn. 260, 120 N. W. 360, 21 L. R. A., N. S., 138; *Pelton v. Illinois Cent. R. Co.* (Iowa), 150 N. W. 236; *Dickinson v. Granbery* (Okl.), 174 Pac. 776; *Howard v. New York etc. R. Co.*, 236 Mass. 370, 128 N. E. 422; *Moore v. Atlantic Coast Line R. Co.*, 185 N. C. 189, 116 S. E. 409; 1 Roberts, Fed. Liab. of Carriers, sec. 558, p. 987 et seq.)

Whether appellant 'was guilty of negligence in this case was a question of fact for the jury; and, the jury having passed upon the evidence, its verdict will not be disturbed on appeal. (*Neil v. Idaho & Wash. N. R. Co.*, 22 Ida. 74, 125 Pac. 331; *Wheeler v. Oregon R. & N. Co.*, 16 Ida. 375, 102 Pac. 374; *Denbeigh v. Oregon W. R. & N. Co.*, 23 Ida. 663, 132 Pac. 112; *Woodruff v. Yazoo & M. V. R. Co.*, 210 Fed. 849, 127 C. C. A. 411; *Hartman v. Western M. R. Co.*, 246 Pa. St. 460, 92 Atl. 698; *Southern P. L. A. & S. L. R. Co. v. Davide*, 210 Fed. 870, 127 C. C. A. 454; *Grow v. Oregon S. L. R. Co.*, 44 Utah, 160, 138 Pac. 398; *Kinzell v. Chicago, M. & St. P. R. Co.*, supra; *Santomassimo v. New York S. & W. R. Co.*, 92 N. J. L. 10, 105 Atl. 14; *Stool v. Southern P. R. Co.*, supra; *Dickinson v. Granbery*, supra; *Hines v. Sweeney*, 28 Wyo. 57, 201 Pac. 165, 1018; *Anderson v. Great N. R. Co.*, 15 Ida. 513, 99 Pac. 91.)

The federal Employer's Liability Act should be liberally construed, and with a view to the object aimed at by Congress. (*Crecelius v. Chicago, M. & St. P. R. Co.*, 284 Mo. 26; *Behrens v. Illinois Cent. R. Co.*, 192 Fed. 581; *St. Louis, I. M. & S. R. Co. v. Conley*, 187 Fed. 949, 110 C. C. A. 97; *Fulgham v. Midland Valley R. Co.*, 167 Fed. 660.)

BUDGE, J.—This action was brought by respondent as administratrix of the estate of August Schuppenies, deceased, for the use and benefit of herself as the surviving widow and the two minor children of the deceased, under the provisions of the federal Employer's Liability Act, to recover damages on account of the alleged negligent operation of a passenger train in the yards of appellant company, at Shoshone, on the morning of December 24, 1920, whereby such train struck the deceased and inflicted injuries from which he died immediately thereafter. The cause was tried to the court and a jury. By the verdict of the jury respondent was awarded $6,600 and judgment was entered for that amount, from which judgment this appeal is taken. After the verdict of the jury was rendered and prior to the entry

of judgment a motion for judgment *non obstante veredicto* was made by appellant and denied.

Deceased was employed as a section-hand and his work consisted, at the time of the accident, in cleaning switches on appellant's tracks in the town of Shoshone. The particular acts of negligence alleged are substantially as follows: That the sound of approaching trains was deadened by reason of the fact that the tracks were covered with snow; that at said time there were locomotives and trains belonging to and operated by appellant moving about in the railroad and station yards of appellant at Shoshone, which locomotives and trains were at said time causing and making considerable noise, all of which facts were well known to appellant and to its agents, servants and employees; that notwithstanding the knowledge of these facts and the presence and duties of said deceased, west-bound passenger train, known and designated as train No. 23, maintained, operated and used by appellant in its business as an interstate carrier by railroad, occupying and using the main line tracks of appellant company, was negligently and carelessly operated by appellant's agents, servants and employees, whereby it came upon said tracks into the town of Shoshone at an excessive rate of speed and, notwithstanding the presence of said deceased upon its tracks, the engineer and fireman in charge of the locomotive drawing the train, as agents, servants and employees of appellant, and in violation of its duty to the deceased, negligently and carelessly failed and neglected to keep a proper lookout for persons or objects which were or might be on its tracks in front of such train, and negligently and carelessly failed and neglected to blow the whistle of its locomotive or to ring the bell or to otherwise inform the deceased of the presence and approach of its train, and negligently and carelessly failed and neglected to adopt or observe any sufficient rules or regulations in the operation of its train whereby those engaged in the work of cleaning its tracks and particularly the deceased, were not properly or duly notified of the approach of its train, and by reason and on account of the wrongful and

negligent acts of appellant the locomotive drawing its train No. 23 struck the deceased, thereby wrongfully and negligently causing his immediate death.

It appears from the record that the deceased was approximately 44 years of age and had followed his employment as a section-hand for a number of years. For approximately a year prior to December 24, 1920, he had been employed on what is known as Section 451, which covered certain territory on the Hailey branch, the boundary of which section reached to the northern limits of the railroad yards at Shoshone. On the night of December 23, 1920, and in the early morning of December 24, 1920, there was a heavy fall of snow and the section gang usually employed on Section 451, including the deceased, were put to work in the railroad yards at Shoshone cleaning snow out of the switches on the various tracks, including the main line, which runs in an easterly and westerly direction. At the time of the accident, deceased was engaged in cleaning out two switches on the south side of the main line tracks a few feet east of what is known as Greenwood Street, the main line tracks crossing this street at right angles to it. These two switches are approximately 300 feet east of the passenger depot at Shoshone. Train No. 23 entered the yards at Shoshone from the east and, upon reaching the two switches aforesaid, the pilot beam of the engine struck the deceased on the back of the head, throwing him clear of the tracks and rendering him unconscious, from which injuries he died immediately thereafter.

There is a direct conflict in the evidence as to whether the train was being operated at an excessive rate of speed. Special interrogatories were submitted to the jury under the direction of the court, Interrogatory No. 3 being as follows:

"At what rate of speed was the train moving when the collision occurred?"

The jury found that the speed of the train was not less than eight nor in excess of fifteen miles per hour. Under the authorities we are not prepared to say that the rate of speed under which the train was operated at the time

of the collision was excessive, but, on the contrary, when the facts are taken into consideration that the track for a considerable distance east of the place where the accident occurred was straight and the view was unobstructed and that the rate of speed was not in violation of any law or ordinance and not shown to be in excess of the rate of speed necessary to be made to the end that the business of the railroad company might be properly transacted, and that it was the customary rate of speed of passenger trains approaching the depot, we think that such rate of speed would not constitute such carelessness or negligence as would render appellant liable therefor.    (*Land v. St. Louis & S. F. R. Co.*, 95 Kan. 441, 148 Pac. 612; *Atchison, T. & S. F. Ry. Co. v. Judah*, 65 Kan. 474, 70 Pac. 346; *Hoffard v. Illinois Cent. R. Co.*, 138 Iowa, 543, 110 N. W. 446, 16 L. R. A., N. S., 797; *Illinois Cent. R. Co. v. Willis' Admr.*, 123 Ky. 636, 97 S. W. 21.)

It is insisted by the appellant that the engineer on train No. 23 blew the whistle at the whistling-post east of the coal-chute, about 800 feet east of the place where the accident occurred; that at or about the coal-chute he set the automatic bell-ringer; that the bell was ringing up to the time of and after the accident, and that he caused the whistle to be blown for the two crossings between the coal-chute and the depot.    Respondent insists that the evidence shows that the whistle was not blown and offered evidence to prove that the bell was not ringing.    In answer to Interrogatory No. 1, which is as follows: "Was the whistle of train 23 sounded after the train arrived within hearing distance of Schuppenies, and if so where was it sounded and what signals were given?" the required number of jurors found from the facts submitted to them that the whistle was not sounded within hearing distance of the deceased.    To Interrogatory No. 2, which is as follows: "Was the bell of the engine of train 23 being rung between the time the train passed the coal-chute and the time of the collision?" the unanimous answer of the jury was in the affirmative. We are therefore bound to conclude that the whistle was

not blown at the crossings nor at any time within the hearing of the deceased, however, that the bell was ringing between the coal-chute and the point of the accident. Due to the fact that the deceased, at the time of the accident, in order to protect himself from inclement weather, was heavily clad and was wearing a cap with ear-flaps which covered his ears; that two engines and passenger trains and a switch engine and freight-cars were being operated in the yards; that three engine bells were ringing while being operated upon parallel tracks, and the noise of freight-cars being switched and the recent fall of snow on the tracks deadening the sound of the approaching train, it is only reasonable to presume that the deceased did not hear the bell of the oncoming train and therefore was not warned of its approach in time to protect himself.

It is insisted by appellant that it owed no duty to the deceased to either ring the bell or sound the whistle at the whistling-post or at the crossings on the approach of its train, and that its failure to blow the whistle was not such carelessness or negligence as would render it liable in damages. Since the jury found that the bell was ringing this particular element of evidence may be eliminated. The authorities are not in harmony touching the duty of a railroad company to sound the whistle at the whistling-post and crossings for the protection of section employees. Appellant, in addition to numerous other cases, cites and relies upon the case of *Aerkfetz v. Humphreys*, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. ed. 758, where it is held that:

"A repairer of tracks employed in a railroad yard which was used for the making up of trains and who was familiar with the manner in which the work was done, and who, knowing that the switch engine was busy moving cars and making up trains, placed himself with his face away from the direction from which cars were to be expected and continued his work without ever looking back, although there was no obstruction to his vision and by ordinary attention he could have observed the approaching cars, and while so employed was struck by the switch engine moving slowly

and injured, was guilty of contributory negligence which prevents his recovery from the railroad company for his injury.

"The person in charge of a switch engine in a railroad yard used for the purpose of moving cars, has a right to act on the belief that the various employees in the yard, *familiar with the continuously recurring movement of the cars*, will take reasonable precaution against their approach, particularly where the cars are moving so slowly that ordinary attention on their part would enable them to avoid them.

"A railroad company is not guilty of negligence as against an employee in moving its cars by a switch engine in its yard slowly and without sending a man in front of the cars to give notice to employees of their approach."

It further appears from the facts in the foregoing case that the injured employee was one of long experience in that yard; that he was familiar with the movement of cars by the switch engine; that he knew that the switch engine was busy moving cars and making up trains and that at any minute cars were likely to be moved upon the track upon which he was working. With that knowledge he placed himself with his face away from the direction from which the cars were expected and continued to work without ever turning to look. It was held that under such circumstances no negligence could be attributed to the parties in control of the train for failure to blow the whistle or ring the bell or to send anyone forward to notify the employees of the oncoming engine.

The facts are not analogous to the case at bar. The record discloses that the deceased in the instant case had been taken from his usual place of employment, which was outside of the railroad yards at Shoshone, and put to work at a place where he had never worked before; that he had no knowledge of train No. 23 or of the time of its arrival at Shoshone; that while all of the other of his coemployees had been duly warned to look out for train No. 23, the deceased had not been warned; that he was not injured by

an engine or train operating within the yards, which might have rendered the situation different.

Appellant also cites and relies upon the case of *Neil v. Idaho & Washington N. R. R.,* 22 Ida. 74, 125 Pac. 331. The distinction applied to the Aerkfetz case, *supra,* is also applicable to the Neil case, and it is to be noted that the second syllabus in the former case is practically identical with the seventh syllabus in the latter case. We do not wish to be understood as taking the position that there are no cases upholding the contention of appellant. However, we are of the opinion that the principle as stated in Elliott on Railroads, vol. 4, sec. 1862, p. 109, is applicable to the particular facts of this case, which is as follows:

"Where, by special order, an employee is assigned to special work at a particular place the employer is bound to exercise ordinary care to prevent injury to the employee, and ordinary care under such circumstances requires that the employer should take precautions to prevent injury to the employee at the particular place."

Whether ordinary care was exercised by the employees and agents of appellant while operating its train and whether ordinary care was exercised in giving or failing to give proper warning to avoid injuring or killing the employee are questions of fact properly left to the jury. Under all circumstances and conditions section employees cannot reasonably be expected to constantly keep a perfect lookout for trains in order to protect themselves against injury and at the same time keep on with their work, and this is obviously true when they are put to work in a particular place under unusual conditions and where they have not worked before. There are many cases in which the question as to whether they exercised ordinary care under such circumstances has been left to the jury. Such a rule is laid down in Labatt on Master & Servant, vol. 4, 2d ed., sec. 1314, where it is said:

"In many instances where the injured servant had had no experience, or virtually none, in dealing with conditions similar to those which he was required to encounter, it is

deemed unwarrantable to take the case from the jury or override a verdict in his favor, although it may be certain that the risk to which the injury was traceable was one which he would have been conclusively presumed to appreciate, if he had been engaged for a longer time in discharging similar duties under similar circumstances, . . . . ''

It is true that it is the duty of section employees to watch out for trains and the engineer has a right to presume that they will remove themselves from danger from an approaching train. He is not required, as a general rule, to stop his train or lessen its speed, and where it appears that the accident was due entirely to the negligence of the employee no recovery can be had. (*Aerkfetz v. Humphreys, supra; Neil v. Idaho & Washington N. R. R., supra; Williams v. Southern Pac. Co.,* 173 Cal. 525, 160 Pac. 660.)

Another ground of negligence alleged is that the engineer and fireman failed to keep a proper lookout and as a result of their negligence in this regard the deceased met his death. Upon this question the evidence is close and standing alone may not be sufficient to justify a recovery. It is not disputed, however, that the fireman saw the deceased at or near the switch when the train reached the coal-chute, some 800 feet from the point where the accident occurred; that the deceased had something in his hand, but whether he was in a stooping position is not clear. The fireman did not notify the engineer of the presence of the deceased on the tracks nor attempt to give him any warning. We think the question of the negligence of the fireman in this regard was properly submitted to the jury.

The engineer, sitting on the opposite side of the cab, testified that he did not see the deceased although he was keeping a sharp lookout. The deceased was within sight of the engineer until the engine approached within 250 feet of him. Within such distance the engineer's view was obstructed by the boiler of the engine. The jury had a right to assume that he must have seen him had he exercised ordinary care. While there are authorities to the contrary, we think the better rule to be that it would have been his

duty to give him the danger signal. (*Mills v. Missouri Pac. Ry. Co.*, 199 Mo. 56, 94 S. W. 973; *Howard v. New York, N. H. & H. R. Co.*, 236 Mass. 370, 128 N. E. 422.) The jury may have found that there was sufficient evidence to justify a finding of negligence in this particular. The engineer must have known that, due to the heavy fall of snow, men would be working on the tracks and there are numerous authorities to the effect that under such circumstances the duty rested upon him to keep a proper lookout for them and to use ordinary care while passing or approaching the point where they were working. (*Hardwick v. Wabash R. Co.*, 181 Mo. App. 156, 168 S. W. 328; *Illinois Cent. R. Co. v. Evans*, 170 Ky. 536, 186 S. W. 173; *Texas & R. Ry. Co. v. Cotts* (Tex. Civ.), 95 S. W. 602; *Grow v. Oregon Short Line R. Co.*, 44 Utah, 160, Ann. Cas. 1915B, 481, 138 Pac. 398.) Their safety was quite as important as the discharge of the business of the company. The general rule would seem to be that it was the duty of the engineer to exercise such ordinary care as a person of ordinary prudence would have exercised under the same or similar conditions, considering, on the one hand, the danger to the men at work and, on the other hand, his necessary duties as an engineer. Whether this duty was properly discharged as well as whether the failure to give signals or warning of the approach of the train, under the peculiar facts and circumstances of this case constituted negligence, were questions of fact properly passed upon by the jury and are not before this court for determination.

As to whether proper rules and regulations were kept and observed by the agents and employees of appellant company in charge of the train to properly or duly notify the deceased of its approach, this question becomes of no serious importance in view of the conclusions heretofore reached.

It is earnestly insisted that the deceased assumed the risk, and, notwithstanding the general rule that appellant was required to use ordinary care in the operation of its train in order to avoid the injury or death of the deceased, that no recovery can be had. That the deceased assumed all

the ordinary risks of his employment which were known to him, or which should have been known by the exercise of ordinary care to a person of reasonable prudence and diligence in like circumstances, may be conceded. The doctrine of assumption of risk is predicated upon a contract, express or implied, and is founded upon the knowledge of the servant, either actual or constructive, as to the hazards to be encountered and his consent to take the chance of danger. (*Carter v. Kansas City Southern Ry. Co.* (Tex.), 155 S. W. 638.) Since the question of assumption of risk, if involved in this case, is for the jury, the judgment should not be reversed on this ground. (*Carter v. Kansas City Southern Ry. Co., supra.*)

Even conceding that the deceased was guilty of contributory negligence we think it will be admitted that unless his negligence was the sole cause of the injury it is not a defense to an action brought under the federal Employers' Liability Act, but only operates in mitigation of damages. (*La Mere v. Railway Transfer Co.*, 125 Minn. 159, Ann. Cas. 1915C, 667, 145 N. W. 1068.) It is to be presumed that if the jury found the deceased guilty of contributory negligence, such fact was taken into consideration by it in arriving at the amount of damages awarded by its verdict.

We have examined the objections made to the admissibility of certain testimony introduced over the objection of appellant touching the matter of whether or not certain witnesses should be permitted to testify regarding their conclusions as to whether or not the whistle was blown and the bell rung. While technically the form of the answers given may not have been correct, we do not think prejudicial error was committed in this regard.

It may not be improper to observe that this case is one which may be said to be on the border line, but in harmony with the spirit and purpose of the federal Employers' Liability Act we are constrained to hold that there is sufficient competent evidence to support the judgment. As was said in the case of *Crecelius v. Chicago, M. & St. P. Ry. Co.*, 284 Mo. 26, 223 S. W. 413: ''The Federal Employers' Lia-

bility Act (U. S. Comp. Stats., secs. 8657–8665) being a humane statute, should receive a liberal interpretation.'' And also in the case of *Behrens v. Illinois Cent. R. Co.,* 192 Fed. 581, it was said:

''Undoubtedly the Act of Congress is in derogation of the common law; but certainly the elimination of the doctrine of fellow servant and the modification of the doctrines of contributory negligence and assumed risk makes for the betterment of human rights as opposed to those of property, and I consider that in the light of modern thought and opinion, the law should be as broadly and as liberally construed as possible.''

The judgment of the lower court should be affirmed, and it is so ordered. Costs are awarded to respondent.

McCarthy, C. J., and William A. Lee, J., concur.

Petition for rehearing denied.