**Kittrell BOLUS, originally suing through his next friend, Dorothy Bolus, Appellant,**

**v.**

**MARTIN L. ADAMS & SON et al., Appellees.**

Court of Appeals of Kentucky.

Jan. 31, 1969.

Rehearing Denied March 31, 1969.

E. Gerry Barker, Louisville, for appellant.

Fielden Woodward, Jack M. Lowery, Jr., Thomas Burton, John F. Rogers, Louisville, for appellees.

CULLEN, Commissioner.

Kittrell Bolus was thrown from a Triumph roadster, in which he had been riding as a passenger, when the roadster went out of control on a suburban road in Jefferson County and hit a tree. The roadster came to a stop in the left traffic lane and Bolus fell inert in the right lane. An automobile driven by Martin Adams, which had been following the Triumph, failed to stop, and it passed over Bolus' outstretched form, whereby he was injured. Bolus sued Adams and the owner of the Adams auto-

mobile. At the close of the plaintiff's case the court directed a verdict for the defendants on the ground that Bolus was shown to have been contributorily negligent as a matter of law (by riding with a driver with whom he had been drinking and whose course of reckless driving he had not protested against). Judgment was entered dismissing the action. Appealing from that judgment Bolus contends only that he was entitled to have his case submitted to the jury under a last-clear-chance instruction.

The accident occurred on Blankenbaker Lane, which is a two-lane blacktop road. From the point of its intersection with Camargo Road, going southward, the Lane rises a hill for a distance of approximately 400 feet. At the crest of the hill the Lane curves to the right. Trees line both sides of the Lane at the crest of the hill and along the curve.

The Triumph, going south, went out of control at the crest of the hill; it skidded for a distance of 115 feet and hit a tree on the left side of the road, after which it came to a stop in the left lane. Bolus was thrown into the right lane. Adams, who had been following the Triumph, almost brought his car to a stop before reaching the spot where Bolus lay, but his car was in motion when it passed over Bolus and it dragged him some five feet.

There was evidence, including the testimony of a disinterested bystander, that the speeds of the two cars were from 40 to 45 miles per hour. Adams testified that he had been following the Triumph around 100 *yards* back, but there was other evidence which would warrant a finding that he was some 400 *feet* back. Adams said he was about "a quarter of the way up" the hill when he saw the Triumph hit the tree and that "the reaction time" took another quarter. He then applied his brakes and turned as far off the road on the left as he could (there was a bank along the edge); he was about half way up the hill when he started braking. However, at that point he had not yet seen Bolus' body in the road;

as he neared the point where the Triumph was, "all of a sudden just from out of nowhere Kit Bolus was thrown back from the car and dropped in front of my car and I already had my brakes on full hard, locked up." At that point he was only 20 feet from Bolus.

Despite Adams' testimony that he applied his brakes firmly when he was only half way up the hill the evidence would warrant the conclusion that he did not effectively apply his brakes until coming much closer to the point of the accident. The hill was 400 feet in length and the Triumph skidded 115 feet after reaching the crest, thus indicating that the point where the Triumph came to rest and Bolus fell in the road was some 300 feet from the point half way up the hill where Adams said he had applied his brakes. According to generally accepted tables of braking distances, a car traveling 40 miles per hour can be brought to a normal stop within a distance of 84 feet after the driver has reacted and applied the brakes, and at 50 miles per hour the distance is only 131 feet. If Adams had applied his brakes where he said he did he should have been able to come to a full stop, without a skid, at least 100 feet before reaching the point of the accident. Instead he skidded 85 feet and was not yet stopped when he reached the point of the accident. The foregoing analysis of time and distance is corroborated by the testimony of the distinterested bystander that some five seconds elapsed between the time the Triumph hit the tree and the time Adams hit Bolus. At 40 miles per hour Adams would have traveled some 300 feet in five seconds.

So, as we said above, it reasonably could be believed that Adams did not apply his brakes when he first observed the Triumph hit the tree. The question in issue is whether this lapse or failure could be found to be culpable negligence on Adams' part.

 The basic duty of a defendant, under the last-clear-chance doctrine is to

*exercise ordinary care* to avoid injuring the plaintiff after he has discovered or should have discovered the latter's peril. Hartman v. Dyer, 298 Ky. 173, 182 S.W.2d 646; Prather's Adm'r v. Allen, 291 Ky. 353, 164 S.W.2d 402; Knecht v. Buckshorn, 233 Ky. 329, 25 S.W.2d 727; Illinois Central R. Co. v. Evans, 170 Ky. 536, 186 S.W. 173. The test is: What would an ordinarily prudent man have done under the circumstances?

Here the situation was (or could be found to be) that Adams saw the Triumph go out of control and hit the tree (resulting, as he said, in "some parts of the car flying down the road toward me, hubcaps and things like that") when he was still such a distance back that he could easily have brought his car to a full stop before reaching the point of the accident. Would an ordinarily prudent man have done so? We think the answer may be governed by the element of *foreseeability*. Would an ordinarily prudent man have anticipated or foreseen that the occupants of the Triumph *might be in such a position, as a result of* the collision with the tree, that they might suffer injury if the following car continued past the point of the accident without stopping?

█ It is not necessary, to impose liability for negligence, that the defendant should have been able to anticipate the precise injury sustained, or to foresee the particular consequences or injury that resulted. It is enough that injury of some kind to some person could have been foreseen. 38 Am.Jur., Negligence, Secs. 24, 62, pp. 671, 713, 714.

█ We think that reasonable minds could conclude that as a result of a collision of such violence as happened to the Triumph, whereby parts of the car were sent "flying down the road," an ordinarily prudent man in Adams' situation would have foreseen that an occupant of the Triumph might be in danger from passing vehicles, and would therefore have immediately brought his car to a stop. Ac-

cordingly, it is our opinion that Bolus was entitled to have his case submitted to the jury under a last-clear-chance instruction.

It might be argued that Bolus was not in "peril," within the meaning of the last-clear-chance doctrine, until his body came to rest in the road, and that since Adams could not have seen Bolus lying in the road until Adams had approached so close as to be unable thereafter to stop (because the body was over the crest of the hill and partly around the curve), Adams did not have a clear chance to avoid injuring Bolus. However, we think it is reasonable to consider that Bolus' "peril" embraced all reasonably foreseeable consequences of the Triumph's hitting the tree that would put Bolus in a position to be injured by the continued approach of the Adams car. Under this view Bolus was in potential peril from movements of the Adams car at the moment the Triumph hit the tree. It was sufficient that Adams saw that peril in time to act; it was not required that he have time to act after observing the *specific form that the peril* ultimately resolved into. We think this proposition is supported by the holding in Fenwick v. Daugherty, Ky., 418 S.W.2d 243.

█ This question of whether "peril" as used in the last-clear-chance doctrine embraces reasonably foreseeable consequences of a situation seems rarely to have arisen. In Chadwick v. City of New York, 301 N.Y. 176, 93 N.E.2d 625, a 1950 case, the New York court said that the question "does not seem to have been considered in any of the reported cases." That court took the same view as we, and held that in order for the doctrine to apply it is not necessary that the defendant have had a precise knowledge of both the exact nature of the danger and of the particular individual threatened, so long as there is proof to support an inference that someone was in peril.

The Restatement also seems to support our view. In Restatement (Second), Torts, Sec. 479, one of the elements of the last-

clear-chance doctrine is stated to be that the defendant "knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it." This indicates that knowledge of the exact, ultimate form of the peril is not required; it is enough if the *situation* is known and the peril *involved in it* is or should be realized.

As in Mullins v. Bullens, Ky., 383 S.W. 2d 130, the posture of the case is such that upon a new trial only the issues of last clear chance and of damages are to be tried.

The judgment is reversed with directions for further proceedings in conformity with this opinion.

HILL, MILLIKEN, PALMORE and STEINFELD, JJ., concur.

REED, J., dissents.